**Gary RAWSON, Plaintiff-Appellee,**

v.

**SEARS, ROEBUCK & CO., Defendant-Appellant.**

**Nos. 85–1223, 85–2366.**

United States Court of Appeals, Tenth Circuit.

June 10, 1987.

Rehearing Denied July 28, 1987.

---

Charles G. Bakaly, Jr., O'Melveny & Myers, Los Angeles, Cal. (Ann Kane Smith, Alhambra, Cal., Gregory A. Eurich and Charles M. Johnson, Holland & Hart, Denver, Colo., and Debra L. Boyd and Joanne B. O'Donnell, O'Melveny & Myers, Los Angeles, Cal., with him on the briefs), for defendant-appellant.

Robert E. Williams, Douglas S. McDowell and Thomas R. Bagby, P.C., McGuiness & Williams, Washington, D.C., on the brief, for amicus curiae Equal Employment Advisory Council.

Before McKAY and ANDERSON, Circuit Judges, and BOHANON, District Judge.[*]

STEPHEN H. ANDERSON, Circuit Judge.

Sears, Roebuck & Company appeals from a denial of post trial motions relating to a $19,096,495.01 judgment against it, plus $11,096.54 in costs, in an age discrimination case. The action was brought by Gary Rawson, a former Sears' employee and store manager, whom Sears fired at age 59.

Rawson was employed by Sears for thirty-three years, becoming manager of the Sears store in Pueblo, Colorado, in 1965, where he served until his termination in 1979. Following his termination he either failed or chose not (the record does not disclose the reason) to pursue his age discrimination claim under the federal antidiscrimination statute enacted for that purpose, Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (ADEA).

In July, 1981, twenty-eight months after his termination and beyond the statutory period for seeking relief under the ADEA, Rawson sued Sears in the Colorado state courts, stating eleven claims for relief, including several common law causes of action.[1] All of those claims were ultimately dismissed except his claim based on an

David M. Ebel, Davis, Graham & Stubbs, Denver, Colo. (Andrew M. Low, Davis, Graham & Stubbs, Denver, Colo., and James A. Carleo, Colorado Springs, Colo., with him on the brief), for plaintiff-appellee.

---

[*] Honorable Luther L. Bohanon, Senior Judge, District of Oklahoma.

1. Rawson alleged, for example, outrageous conduct, breach of contract, wrongful conduct and promissory estoppel. Rawson has not appealed the dismissal of those claims and the only issue on appeal is the existence of a right of action under Colo.Rev.Stat. §§ 8–2–116 and 117 (1973). This is at least a partial answer to the dissent's invitation for us to engage in some wide-ranging search for a common law cause of action to redress the wrong allegedly suffered by Rawson.

implied private right of action under a Colorado penal statute, Colo.Rev.Stat. §§ 8-2-116 and 117 (1973).[2] Those sections impose a fine from $100 to $250 upon employers who discharge employees solely because of age.[3] Those provisions had been the law in Colorado for seventy-eight years prior to Rawson's suit without any private action having been brought under them. Shortly after Rawson's victory in this suit the Colorado legislature repealed the statutes in question, placing a similar provision under the Colorado Antidiscrimination Act (CAA), Colo.Rev.Stat. §§ 24-34-401 to 406 (1982 & Supp.1986). Thus, this case and a few which followed are the only ones involving the propriety of private suits under those state penal statutes. The Colorado Supreme Court has never ruled on the question, and both parties have resisted certification.[4]

Sears removed Rawson's suit from state to federal court on grounds of diversity of citizenship. On Sears' subsequent motion to dismiss for failure to state a claim, the district court held that "the Colorado legislature intended to create a private right of action under C.R.S. § 8-2-116 and that such a right of action is consistent with the state's legislative scheme in labor relations." *Rawson v. Sears Roebuck & Co.*, 530 F.Supp. 776, 778 (D.Colo.1982). It also denied, in a published opinion, Sears' later motion for summary judgment. *Rawson v. Sears Roebuck & Co.*, 554 F.Supp. 327 (D.Colo.1983). Separate jury trials were held on the questions of liability and damage, the outcome of both trials being favorable to Rawson. Following the trial on liability, in a third published opinion, the

district court held again that private damage awards were proper under section 8-2-116. *Rawson v. Sears Roebuck & Co.*, 585 F.Supp. 1393 (D.Colo.1984). It then awarded Rawson costs amounting to $11,096.54. At the conclusion of the damages trial the jury awarded Rawson: $580,500 for lost wages and benefits; $264,410 for future wages and benefits and reduction in the value of his pension benefits; $5,000,000 for pain, suffering and humiliation; and $10,000,000 in punitive damages. Sears' motions for judgment n.o.v., new trial, or remittitur were denied. 615 F.Supp. 1546. Judgment entered on the jury verdict included prejudgment interest in the amount of $3,251,585.01, for a total judgment of $19,096,495.01.

On appeal Sears asserts multiple assignments of error in the proceedings below. Two threshold issues, which we find dispositive of this appeal, are whether there is an express or an implied private right of action under the Colorado penal statute in question, sections 8-2-116 and 117, either alone or in combination with sections 8-3-108(1)(*l*) and 8-3-121(1) of Colorado's Labor Peace Act. Because we find that the statutes in question provide Rawson with neither an express right of action nor an implied private right of action, we find it unnecessary to address the other issues raised in this appeal, and we reverse the judgment below.

## INTRODUCTION

At the outset we note that our task here is to interpret and apply the law of Colorado as we believe the Colorado Supreme Court would. *City of Aurora v. Bechtel*

---

2. In his initial complaint, Rawson alleged only a violation of section 8-2-116 and thereby, implicitly, asserted only an implied right of action. On appeal, he vigorously argues that sections 8-2-116 and 117, in conjunction with sections 8-3-108(1)(*l*) and 8-3-121(1) of Colorado's Labor Peace Act, Colo.Rev.Stat. §§ 8-3-101 to 123 (1986), provide him with an express right of action as well.

3. Section 8-2-116 provides as follows:
   No person, firm, association, or corporation conducting within this state any business requiring the employment of labor shall discharge any individual between the ages of eighteen and sixty years solely and only upon the ground of age, if such individual is well versed in the line of business carried on by

such person, firm, association, or corporation and is qualified physically, mentally, and by training and experience to satisfactorily perform and does satisfactorily perform the labor assigned to him or for which he applies. Section 8-2-117 subjects any person who violates section 8-2-116 to a fine of between $100 and $250.

4. Before the liability phase of the trial in this case, Sears requested that the district court certify the question of the existence of a private right of action to the Colorado Supreme Court. Rawson opposed certification and the district court declined to certify the issue. In this court, both parties have opposed certification.

*Corp.,* 599 F.2d 382, 386 (10th Cir.1979); *Symons v. Mueller Co.,* 493 F.2d 972 (10th Cir.1974). Prior to the district court decision in this case, no Colorado court or federal court applying Colorado law had addressed the particular question of whether a private right of action exists under section 8–2–116 for age discrimination. Since that decision, federal district courts in Colorado and lower Colorado state courts have reached conflicting conclusions on that issue. *Compare Spulak v. K–Mart Corp.,* 664 F.Supp. 1395 (D.Colo.1985) (Finesilver, J.); *Grandchamp v. United Air Lines, Inc.,* 36 Empl.Prac.Dec. (CCH) ¶ 34,987 (D.Colo. Jan. 15, 1985) (Carrigan, J.) [Available on WESTLAW, DCT database]; *and Marks v. Cobe Laboratories,* No. 85–CV–2726 (Jefferson Dist.Ct.Colo. Nov. 12, 1985) (all following *Rawson* and finding that a private right of action exists) *with Taylor v. K–Mart Corp.,* No. 85–M–2336 (D.Colo. Jan. 13, 1986) (Matsch, J.) [Available on WESTLAW, DCT datebase]; *Boccalatte v. Asamera Oil (U.S.) Inc.,* No. 86–CV–6283 (Denver Dist.Ct.Colo. Jan. 11, 1987); *Sandro v. ICM Mortgage Corp.,* No. 86–CV–6 (Arapahoe Dist.Ct.Colo. July 1, 1986) *and Laird v. Montgomery Ward, Inc.,* No. 85–CV–5569 (Denver Dist.Ct.Colo. Apr. 18, 1986) (finding that no private right of action exists).[5]

In endeavoring to ascertain the proper construction of state law where no authoritative state court decision exists, we acknowledge that "[t]he views of a resident federal district judge concerning the local law of his home state are entitled to some deference by an appellate court." *Corbitt v. Andersen,* 778 F.2d 1471, 1475 (10th Cir.1985); *see also Inryco, Inc. v. CGR Bldg. Systems, Inc.,* 780 F.2d 879, 881 (10th Cir.1986); *Polin v. Dun & Bradstreet, Inc.,* 768 F.2d 1204, 1207 (10th Cir. 1985); *An–Son Corp. v. Holland-America Ins. Co.,* 767 F.2d 700, 704 (10th Cir.1985); *Business Interiors, Inc. v. Aetna Casualty & Surety Co.,* 751 F.2d 361, 363 (10th Cir.1984). However, "it is inappropriate to defer to the district court's views" where "another resident district court judge has expressed views contrary to those expressed by the trial court" in the case under review. *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1384 n. 2 (10th Cir. 1985) (McKay, J.); *McGehee v. Farmers Ins. Co.,* 734 F.2d 1422 (10th Cir.1984) (rule of deference to local federal district judge's interpretation not applied where contrary view expressed by another resident federal district judge). As indicated by the cases cited earlier, federal district judges in Colorado disagree on the question of Colorado law before us. Because of that, and other facts unique to this case,[6] we are not confronted with any issue of deference to the district court's interpretation of Colorado law.[7] We must, therefore, make our own independent inquiry into the proper inter-

---

**5.** We note that unreported or unpublished state trial court decisions are not binding on a federal court applying state law in a diversity case nor necessarily indicative of how the state's highest court will resolve an issue of state law. *See State Farm Mut. Auto Ins. Co. v. Travelers Indem. Co.,* 433 F.2d 311 (10th Cir.1970); *see also Guinand v. Atlantic Richfield Co.,* 485 F.2d 414 (10th Cir.1973). Nonetheless, we cite the various state court decisions concerning section 8–2–116 to indicate the degree of uncertainty and disagreement among the courts which have addressed the existence of a private right of action under section 8–2–116.

**6.** At the time of the district court's ruling in this case no Colorado state court had addressed the legal question before us. Thus, the district court did not have the benefit of even lower state court interpretations. Since the ruling in this case there have been a number of lower Colorado state court decisions on the subject, the majority opposing the interpretation under review. As we indicated in *Stafos v. Jarvis,* 477 F.2d 369, 372–73 (10th Cir.), *cert. denied,* 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973), less deference is afforded the district court's view when the court of appeals is aided in its consideration by state court decisions. Furthermore, as the text of this opinion shows, there is adequate authority from Colorado state courts to guide our deliberations in this case.

**7.** The existence of widespread disagreement among lower Colorado state courts and federal district courts in Colorado makes this case a wholly inappropriate vehicle for testing the "local judge" rule, as the dissent wishes to do. The dissent indulges itself by citing seventy-two cases to establish the existence of that rule, but makes no effort to describe established exceptions. Not one of the cited cases involves a fact situation, similar to that in the instant case, where differing conclusions on a point of state

pretation of state law, taking due note of the relevant state court and federal district court decisions. *See, e.g., Big River Grain, Inc. v. SBA,* 718 F.2d 968 (9th Cir. 1983); *Luke v. American Family Mut. Ins. Co.,* 476 F.2d 1015 (8th Cir.1972), *cert. denied,* 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973); *Ward v. Hobart Mfg. Co.,* 450 F.2d 1176 (5th Cir.1971); *Mutual of Omaha Ins. Co. v. Russell,* 402 F.2d 339 (10th Cir.1968), *cert. denied,* 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 753 (1969). In so doing, we "may look to all resources, including decisions of other states, as well as Colorado and federal decisions, and to the general weight and trend of authority." *City of Aurora v. Bechtel Corp.,* 599 F.2d 382, 386 (10th Cir.1979); *see also Burgert v. Tietjens,* 499 F.2d 1 (10th Cir.1974).

With that standard of review in mind, we turn now to an examination of Rawson's arguments that there is either an express or an implied private right of action under sections 8–2–116 and 117.

## I.

### EXPRESS RIGHT OF ACTION

■ Rawson argues that, collectively, sections 8–2–116 and 8–2–117 of the 1903

Labor Relations Act and sections 8–3–108 and 8–3–121 of the 1943 Labor Peace Act create an express right of action for age discrimination.[8] He claims that the language and history of both Acts and the fact that they occupy successive chapters in the same statutory title support his argument. We find his argument unpersuasive. The fact that the two Acts were enacted forty years apart is not alone dispositive; however, absent some clearer indication by the legislature of an intent to link the two Acts, we are reluctant to view the latter one as implicitly incorporating any provisions of the earlier one. *Cf. Sterling v. Industrial Comm'n,* 662 P.2d 1096 (Colo.App.1982).[9]

In addition, from our review of the provisions of the Labor Peace Act and those Colorado cases discussing and interpreting it, we find no evidence that the Colorado legislature intended that Act to extend beyond union-related employer-employee disputes. As Sears points out, in defining "labor dispute" in section 8–3–104(13)(b), the Act specifically states:

The general right of an employer to select his own employees is recognized

---

law have been reached by resident federal district judges in the same state, and lower state courts have issued an array of decisions subsequent to the federal court decision. *See infra* note 14. Notably missing from the seventy-two cited cases is the dissenting judge's opinion, speaking for this circuit, to the effect that deference is inappropriate where local district judges differ. *Maughan v. SW Servicing Inc.,* 758 F.2d at 1384 n. 2. *See also Catts Co. v. Gulf Ins. Co.,* 723 F.2d 1494 (10th Cir.1983) (McKay, J., dissenting).

In sum, we are not abandoning any firmly established circuit-wide rule. Rather, we are simply fulfilling our appropriate appellate function in this case. Indeed, we are following the exhortation of our dissenting brother to avoid making "this court's determination of legal issues in diversity cases little more than a will-o'-the-wisp." *Catts Co. v. Gulf Ins. Co.,* 723 F.2d 1494, 1504 (1983) (McKay, J., dissenting).

8. Section 8–3–121(1) provides:

Any person who suffers injury because of an unfair labor practice has a right of action, jointly and severally, against all persons participating in said practice for damages caused to the injured person thereby.

Section 8–3–108(1)(*l*) defines an unfair labor practice to include the commission of "any crime or misdemeanor in connection with *any controversy as to employment relations*" (emphasis added). Thus, Rawson argues that the violation of section 8–2–116 constitutes the commission of a crime or misdemeanor and, therefore, amounts to an "unfair labor practice" which is subject to an express right of action under sections 8–3–108 and 121.

9. Rawson argues that the incorporation into section 8–3–108(1)(k) of the Labor Peace Act of the "blacklist" utilized in the Labor Relations Act indicates that the two Acts should be read together and complement each other. We agree with Sears that such incorporation of the definition of a blacklist is more indicative of the legislature's intent not to incorporate violations of section 8–2–116 within the ambit of unfair labor practices than of an intent to link the two Acts together. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Public Serv. Co. v. Federal Energy Regulatory Comm'n,* 754 F.2d 1555 (10th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986).

and shall be fully protected. It shall not constitute a labor dispute if an employer discharges or refuses to employ an employee on account of incompetence, neglect of work, unsatisfactory service, or dishonesty; but *the discharge of an employee or the refusal to employ an employee shall constitute a labor dispute only when such discharge or refusal to employ is founded upon membership in a union or labor organization or activity therein or when such discharge or failure to employ is in violation of a contract.*

*Id.* (emphasis added). In contrast, Rawson argues that the Act extends to dismissals of employees on the basis of age. He relies on the phrase "any crime or misdemeanor in connection with any controversy as to employment relations" in section 8–3–108(1)(*l*) as evidence that the Labor Peace Act is interested in more than merely "labor disputes." Viewing the statutory scheme as a whole, however, we do not find the difference between "labor dispute" and "employment relations" indicative that sections 8–3–108 and 8–3–121 confer a right of action on persons alleging a violation of section 8–2–116. As Sears has also pointed out, the very name of the Act provides some guidance as to its intended scope. *See U.M. v. District Ct., County of Lorimer,* 631 P.2d 165 (Colo.1981); *Conrad v. City of Thornton,* 191 Colo. 44, 553 P.2d 822 (1976); *Blanchard v. Griswold,* 121 Colo. 29, 214 P.2d 362 (1949).

Furthermore, except for the lower court decision in this case, we can find no reported Colorado decision which has applied the Labor Peace Act and its express right of action to any context outside of union-related activities or disputes. *See, e.g., Pipeliners Local Union No. 798 v. Ellerd,* 503 F.2d 1193 (10th Cir.1974); *Denver Bldg. & Constr. Trades Council v. Shore,* 132 Colo. 187, 287 P.2d 267 (1955); *Bennett's Restaurant, Inc. v. Industrial Comm'n,* 127 Colo. 281, 256 P.2d 891 (1953). In *Bennett's Restaurant,* the Colorado Supreme Court suggested that the Act as a whole is to be construed consistent with the view expressed in section 8–3–104(13)(b) when the court stated:

> "The act does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them. The employer may not, under cover of that right, intimidate or coerce its employees with respect to their self-organization and representation, and, on the other hand, the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than such intimidation and coercion. The true purpose is the subject of investigation with full opportunity to show the facts."

256 P.2d at 894 (quoting *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 45, 57 S.Ct. 615, 628, 81 L.Ed. 893 (1937)). We, therefore, are unwilling to extend the provisions of the Labor Peace Act to situations which do not involve union-related activities.[10]

---

10. Finally, Rawson's alleged express right of action depends upon the commission of a "crime or misdemeanor in connection with any controversy as to employment relations." Section 18–1–402 of Colorado's Criminal Code requires that the commission of any "offense" be proved beyond a reasonable doubt. Colo.Rev.Stat. § 18–1–402 (1986). Here, there has been no prosecution of Sears and, a fortiori, no proof beyond a reasonable doubt that Sears committed any crime or misdemeanor. Rather, Rawson seeks here to show a violation of section 8–2–116 for the first time. The district court noted this problem when it stated that it:

> of course cannot determine whether the defendant has criminally violated C.R.S. § 8–2–116. However, the Colorado legislature's broad definition of unfair labor practices *in-*

*dicates an intent to create a private right of action to anyone who can prove by a preponderance of the evidence that a defendant has violated a criminal labor statute.*

*Rawson,* 530 F.Supp. 776, 778 (emphasis added). We do not believe that, for the purpose of an *express* right of action, the definition of unfair labor practices intends to abrogate the usual standard of proof for a criminal charge such as a criminal violation of section 8–2–116. Rather, we view the reference to the commission of any crime or misdemeanor to require the usual showing, as specified in section 18–1–402, of proof beyond a reasonable doubt. While the "preponderance of the evidence" standard may be appropriate for a private right of action *implied* under a statutory scheme, we are unwilling to endorse the incorporation of that standard in an *express* private right of action which

For the foregoing reasons, we find that Rawson has no express right of action for age discrimination under the statutes upon which he relies. We turn, therefore, to a consideration of whether an implied private right of action exists for age discrimination under section 8–2–116.

## II.

## IMPLIED PRIVATE RIGHT OF ACTION

Rawson argues that the Colorado courts would imply a private right of action under section 8–2–116 under common law principles and asks us to affirm the district court's holding to that effect. We first examine the district court's rationale for concluding that a private right of action exists.

### A. *District Court's Analysis.*

The district court, citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), observed that the implication of a private right of action "is a question of statutory construction." *Rawson,* 530 F.Supp. at 777. It then applied the four-part test established by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),[11] for determining the existence of an implied right of action under a federal statute. The district court observed that "[b]ecause the present case involves a Colorado stat-

ute, the U.S. Supreme Court's analysis is not controlling; however, in the absence of any contrary word from the Colorado Supreme Court, the *Cort* test provides useful guidance." *Rawson,* 530 F.Supp. at 778. The district court concluded that "the first three elements of the *Cort* test are satisfied here." *Id.* The court found that section 8–2–116 "especially singles out employees between the ages of 18 and 60 who have been discharged solely because of their age." *Id.* The court then found the second part of the *Cort* test was met because "other statutes [sections 8–3–121(1) and 108(1)(*l*) ] indicate that the Colorado Legislature intended to create a private right of action here." *Id.* Finally, the court concluded that the third part of the *Cort* test was satisfied because "such a right of action is consistent with the state's legislative scheme in labor relations." *Id.*[12] The district court distinguished three Colorado Supreme Court cases cited by Sears, *Quintano v. Industrial Comm'n,* 178 Colo. 131, 495 P.2d 1137 (1972), *Gladden v. Guyer,* 162 Colo. 451, 426 P.2d 953 (1967), *Colorado Cent. R.R. Co. v. Humphrey,* 16 Colo. 34, 26 P. 165 (1891), as "inapposite."

We will examine Colorado law and, like the district court, draw "useful guidance" from the Supreme Court's case law concerning implied rights of action in reaching our conclusion as to the proper interpretation of Colorado law.

---

depends upon the existence of a criminal violation.

**11.** In *Cort,* the Court considered the following factors:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? *See, e.g., National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414 U.S. 453, 458, 460, 94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646 (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? *See, e.g., Amtrak, supra; Securities Inves-*

*tor Protection Corp. v. Barbour,* 421 U.S. 412, 423, 95 S.Ct. 1733, 1740, 44 L.Ed.2d 263 (1975); *Calhoun v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? *See Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 1445–46, 10 L.Ed.2d 605 (1963); *cf. J.I. Case Co. v. Borak,* 377 U.S. 426, 434, 84 S.Ct. 1555, 1560–61, 12 L.Ed.2d 423 (1964); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 394–5, 91 S.Ct. 1999, 2003–05, 29 L.Ed.2d 619 (1971); *id.,* at 400, 91 S.Ct. at 2006–07 (Harlan, J., concurring in judgment).

422 U.S. at 78, 95 S.Ct. at 2087–88 (emphasis original).

**12.** The district court correctly found the fourth part of the *Cort* test inapplicable to this case.

## B. *Colorado Law on Implied Rights of Action.*

As we have indicated, prior to the lower court decision in this case no Colorado court had addressed the question of whether an implied right of action exists for age discrimination under section 8–2–116.[13] The few decisions subsequent to the lower court case have provided little detailed analysis or explanation of court holdings concerning the existence or nonexistence of such an implied right of action.[14] Thus, we must make our own inquiry into Colorado law to determine the appropriate resolution of this issue.

We have found numerous Colorado cases which have expressed a general unwillingness to expand upon statutory remedies specifically provided in a statutory scheme. Sears relies in particular upon *Silverstein v. Sisters of Charity*, 38 Colo.App. 286, 559 P.2d 716 (1976). There, the plaintiff, a physically disabled person, sued two health care corporations on the ground that they discriminated against her in violation of Colo.Rev.Stat. § 24–34–801(1)(b) (1973) when they refused to hire her as a respiratory therapist. Section 24–34–801 did not expressly provide for civil actions for compensatory or exemplary damages. Furthermore, there was a criminal penalty for

**13.** Both parties agree that the legislative history of section 8–2–116, first enacted in 1903, sheds no light upon the question of the existence of a right of action under the statute.

**14.** In *Boccallate v. Asamera Oil (U.S.) Inc.*, No. 86–CV–6283 (Denver Dist.Ct.Colo. Jan. 11, 1987), the state court found that "there is no private right of action for damages for violations of C.R.S. § 8–2–116." In so holding, it noted the *Rawson* decision, as well as the decisions in *Grandchamp v. United Air Lines, Inc.*, 36 Empl.Prac.Dec. (CCH) ¶ 34,987 (D.Colo. Jan. 16, 1985) [Available on WESTLAW, DCT database] and *Spulak v. K–Mart Corp.*, 664 F.Supp. 1395 (D.Colo. 1985), but rejected the reasoning of those cases and relied, instead, on *Silverstein* and the action of the Colorado legislature in repealing sections 8–2–116 and 117 and incorporating age discrimination within the CAA. Similarly, in *Sandro v. ICM Mortgage Corp.*, No. 86–CV–6 (Arapahoe Dist.Ct.Colo. July 1, 1986), the state court stated that it agreed with the defendant that "no private cause of action is provided for a violation of Section 8–2–116 C.R.S. ... relying on the reasoning of *Silverstein v. Sisters of Charity*, 38 Colo.App. 286, 559 P.2d 716 (1976)." The state court in *Laird v. Montgomery Ward*, No. 85–CV–5569 (Denver Dist.Ct.Colo. April 23, 1986) likewise concluded that "[t]he legislature, however, did not specifically adopt a civil cause of action (as they could have and did in C.R.S. 8–2–108(2)) under this statute. It provided for a fine as its only sanction. Therefore, the Court does not have the authority to impose civil liability." By contrast, in *Marks v. Cobe Laboratories*, No 85–CV–2726 (Jefferson Dist.Ct.Colo. Nov. 12, 1985), the state court specifically adopted the rationale of *Rawson* and concluded that a private right of action exists.

The federal district courts have been similarly divided. In *Brezinski v. F.W. Woolworth Co.*, 626 F.Supp. 240 (D.Colo.1986) and in *Brenimer v. Great Western Sugar Co.*, 567 F.Supp. 218 (D.Colo.1983), Judge Kane followed his own

view in *Rawson* and reiterated that a private right of action exists under section 8–2–116. In both *Spulak* and *Grandchamp*, the district court employed the same reasoning as in *Rawson*. By contrast, the district court in *Taylor v. K-Mart Corp.*, No. 85–M–2336 (D.Colo. Jan. 13, 1986) [Available on WESTLAW, DCT database], concluded that "there is no private right of action for a violation of C.R.S. § 8–2–116." Similarly, the district court in *Glover v. United Air Lines, Inc.*, No. 86–M–323 (D.Colo. June 24, 1986) [Available on WESTLAW, DCT database], dismissed the plaintiff's second claim stating "contrary to the view expressed in *Rawson v. Sears Roebuck & Co.*, 530 F.Supp. 776 (D.Colo.1982), and contrary to *Marks v. Cobe Laboratories*, No. 85–CV–2726 (Jefferson County District Court, Colorado) the Colorado statute in effect at the time of the operative facts in this case did not provide for a private right of action under C.R.S. 8–2–116, and the court being also of the view that the recent repeal of that statute and enactment of a specific age discrimination statute supports this conclusion."

In *Silver v. St. Luke's Hosp., Inc.*, No. 84–M–2046 (D.Colo. May 3, 1985) [Available on WESTLAW, DCT database], the district court simply stated that, on the question of the existence of a private right of action under section 8–2–116, "[t]he state law is unsettled and should not be addressed in this case." In *Borumka v. Rocky Mountain Hosp.*, 599 F.Supp. 857, 859 (D.Colo. 1984), the district court noted the *Rawson* decision but, because the "Colorado courts have not had the occasion to address the issue," the court declined to exercise pendent jurisdiction over the claims based on section 8–2–116; *accord, Hensman v. Adams County Dep't. of Social Servs.*, 623 F.Supp. 96 (D.Colo.1985); *DiRito v. Ideal Basic Indus., Inc.*, 617 F.Supp. 79 (D.Colo. 1985). Finally, in *Bouts v. United Air Lines, Inc.*, No. 83–F–1329 (D.Colo. Sept. 18, 1984), the district court denied the defendant's motion to dismiss or for summary judgment without prejudice as to the plaintiff's claim under section 8–2–116, without any explanation therefor.

a violation of section 24–34–801 rendering such a violation a misdemeanor. Nonetheless, the plaintiff argued that a private right of action should be implied. The Colorado Court of Appeals disagreed. In so doing, it stated:

> The relevant portions of that statute confer new rights and duties unknown at common law, and provide criminal penalties for violations thereof. Where a statute creates legal duties and provides a particular means for their enforcement, the designated remedy excludes all others. *Colorado Cent. R. Co. v. Humphreys*, 16 Colo. 34, 26 P. 165 (1891). *See also Board of County Commissioners v. HAD Enterprises, Inc.*, 35 Colo. App. 162, 533 P.2d 45 (1974). Here, there is no question but that the legislature could have authorized civil penalties for violation of the act. [citations omitted]. However, it chose to impose only a criminal sanction. Therefore, we have no authority to impose civil liability. *Quintano v. Industrial Commission*, 178 Colo. 131, 495 P.2d 1137 (1972). *See also Swenson v. LaShell*, 118 Colo. 333, 195 P.2d 385 (1948).

559 P.2d at 718. The court also rejected the plaintiff's argument that the inadequacy of the specified criminal penalty indicated that an implied civil remedy was appropriate. "However, the legislature sought to deter such discrimination by making violation of the statute a misdemeanor; thus, we cannot disturb its apparent determination that the criminal penalty provided is an adequate remedy." *Id.*[15]

The Court of Appeals in *Silverstein* also indicated that its reluctance to expand upon specified statutory remedies extended even to "legislation designed to benefit particular individuals or classes." *Id.* Relying on *Quintano v. Industrial Comm'n*, 178 Colo. 131, 495 P.2d 1137 (1972), the Court of Appeals cautioned "in the area of remedies in furtherance of legislative purposes the courts should proceed with great caution, leaving determination of the appropriate means of enforcement to the legislature." *Id.* at 718–19. *Quintano* involved the question of whether the Colorado Industrial Commission or any of its individual members could be liable under Colo.Rev. Stat. § 80–2–1 (1963) in an action for damages the plaintiff allegedly suffered when a machine malfunctioned. Section 80–2–1 provides, in pertinent part:

> The industrial commission of Colorado shall be charged with the inspection of all factories, mills, workshops ... or any kind of an establishment wherein laborers are employed or machinery used, for the purpose of protecting said employees or guests against damages arising from imperfect or dangerous machinery....

*Id.* The Colorado Supreme Court affirmed the Court of Appeals' dismissal of the complaint against the Commission "on the basis of sovereign immunity," and against the individual Commission members, stating that:

> If the General Assembly has the intent that employees and guests may use this statute as the basis for civil liability, then its expression of this intent should be loud and clear, *i.e.*, by authorizing the remedy.

495 P.2d at 1139.[16]

Other cases in Colorado express the same general philosophy. *See Board of*

---

**15.** In *Cort v. Ash,* the Supreme Court stated that the "provision of a criminal penalty does not necessarily *preclude* implication of a private cause of action for damages." 422 U.S. at 79, 95 S.Ct. at 2088 (emphasis original). Nonetheless, as we discuss further *infra,* the Supreme Court has made clear that when implying remedies under federal statutes, legislative intent is the touchstone, not necessarily the existence or nonexistence of a criminal penalty.

**16.** The district court in this case distinguished *Quintano,* stating:

[T]he court held that it generally would not find an implied right of private civil action against a state agency in a new statute, because of the problems of sovereign immunity. 530 F.Supp. at 778 n. 3. We do not completely agree with the district court's analysis of *Quintano.* After noting that the statute at issue in that case "specifically designates the classes of individuals for whose benefit it is intended," the court in *Quintano* stated that it affirmed the dismissal of the complaint against the individual commissioners *"by reason of the philosophy* of this court as expressed in *Evans [v. Board of County Comm'rs,* 482 P.2d 968 (Colo.1971) in

*Comm'rs v. Pfeifer,* 190 Colo. 275, 546 P.2d 946, 949 (1976) ("in this case the legislature has clearly and expressly established the remedies available to the Board in order to enforce its subdivision requirement, and they are so limited."); *Gladden v. Guyer,* 162 Colo. 451, 426 P.2d 953, 957 (1967) ("It is for the legislature and not the judiciary to determine the penalty for violation of a statute. [citation omitted]. The penalty provided by the legislature for [violation of the statute] is a fine ... or imprisonment ..., or both. To declare void a contract entered into without such certificate [as the statute required] would be enlarging upon the penalties provided by the legislature.");[17] *American Television & Communications Corp. v. Manning,* 651 P.2d 440, 447 (Colo.App.1982) ("where a statute creates legal duties which were non-existent at common law and provides a particular means for their enforcement, the designated remedy is exclusive, and courts should not imply new remedies to accompany the new right in the absence of some legislative indication or other circumstances that such a result was intended."); *Hargreaves v. Skrbina,* 635 P.2d 221, 227 (Colo.App.1981) ("since no specific legislative authorization for attorneys' fees appears in the Longmont ordinance ... an award of attorneys' fees would be improper. See *Silverstein.*"), *aff'd in part, rev'd in part,* 662 P.2d 1078 (Colo.1983); *Board of County Comm'rs v. HAD Enterprises, Inc.,* 35 Colo.App. 162, 533 P.2d 45, 46 (1974) ("[the statute at issue] provides that one who violates the terms thereof shall be guilty of a misdemeanor and may be sub-

ject to a fine and imprisonment. These provisions are the sole remedies under the act.... [W]here the legislature has not seen fit to authorize a particular remedy in a statute, we cannot supply one."); *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370, 1378 (Colo.App.1982) ("The General Assembly could have added the remedy of a private civil action for damages to its catalog of sanctions. It did not do so, however, and in the absence of any indication of contrary legislative intent, we must assume that the specific remedies designated by the General Assembly exclude all others."), *aff'd on other grounds,* 691 P.2d 1138 (Colo.1984).

One of the more thorough discussions of Colorado law concerning implied rights of action is contained in *Holter v. Moore & Co.,* 681 P.2d 962 (Colo.App.1983), in which the court stated:

Colorado has accepted the guidelines set down by the United States Supreme Court in *Cort v. Ash,* 422 U.S. 66 [95 S.Ct. 2080, 45 L.Ed.2d 26] ... (1975) as useful for determining whether a statute impliedly authorizes a private cause of action. *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d 1051 (Colo.1980). There are three factors which determine whether a private remedy is implicit in a statute which does not expressly authorize such a remedy. They are (1) whether the plaintiff is within the class for whose benefit the statute was enacted, (2) whether the legislature has explicitly or implicitly intend-

which] ... [w]e said in effect that *there are certain fields, such as sovereign immunity,* in which the courts should leave establishment of substantive law to the legislative branch. We have the same view as to the matter under consideration." 495 P.2d at 1139 (emphasis added). Thus, we read the Colorado Supreme Court's language in *Quintano* more broadly than did the district court here. The court was not simply affirming the dismissal of the complaint because of sovereign immunity considerations; rather, its language evidenced a broader concern about judicial implication of liability under statutes where the legislature has not explicitly so provided.

**17.** The district court in *Rawson* also found *Gladden* "inapposite" because:

the court held that a party's violation of a public cattle-testing statute did not void a contract it entered into, but only made it voidable. The court's decision therefore implies that the other party could exercise a right stemming from the statute to void the contract if it so desired. 530 F.Supp. at 778 n. 3. We disagree also with the district court's narrow interpretation of *Gladden.* The court in *Gladden* stated it would not declare the contract at issue void, but "[a]t most ... merely voidable." 426 P.2d at 957. We do not believe that the court's opinion evidences a willingness to imply civil damages liability for the violation of a statute which does not so provide.

ed to create a private remedy, and (3) whether an implied private remedy would be consistent with the purposes of the legislative scheme. *Cort v. Ash, supra.*

The focus of the inquiry is whether the legislature intended to create a private cause of action. *Touche Ross & Co. v. Redington,* 442 U.S. 560 [99 S.Ct. 2479, 61 L.Ed.2d 82] ... (1979). If the statute expressly provides a remedy, courts must be chary of reading others into it. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11 [100 S.Ct. 242, 62 L.Ed.2d 146] ... (1979). In the absence of strong indicia of legislative intent to the contrary, courts are compelled to conclude that the legislature provided precisely the remedies it considered appropriate. *Middlesex County Sewerage Authority v. Sea Clammers,* 453 U.S. 1 [101 S.Ct. 2615, 69 L.Ed.2d 435] ... (1981).

Applying these principles here, we note that § 12–61–103(2) does not contain language indicating a legislative intent to authorize private remedies for its violation. The statutory scheme authorizes the Commission to enforce compliance with the provisions and to discipline noncompliance.... Where a statute creates legal duties and provides a particular means of enforcement, the designated remedy is exclusive and courts are without authority to impose others. *Silverstein v. Sisters of Charity,* 38 Colo.App. 286, 559 P.2d 716 (1976). We find no "loud and clear" expression of legislative intent authorizing a private remedy for violations of § 12–61–103(2) and Commission Rules C–4 through C–7. *See Quintano v. Industrial Commission,* 178 Colo. 131, 495 P.2d 1137 (1972). And in light of the enforcement procedures provided in the statutory scheme, coupled with lack of legislative intent authorizing a private cause of action, we must refrain from inferring one.

*Id.* at 964. *See also Bennett v. Furr's Cafeterias, Inc.,* 549 F.Supp. 887 (D.Colo. 1982) (in finding that the applicable Colorado statute of limitations was not tolled, the district court stated that its holding was "in keeping with the general hesitancy of the courts to judicially except cases from applicable limitations statutes and is of a piece with the Colorado court's general approach to the problem of 'judicial legislation.' " *Id.* at 892–93 (footnotes omitted)); *Cloverleaf Kennel Club, Inc. v. Colorado Racing Comm'n,* 620 P.2d 1051 (Colo. 1980); *Agnello v. Adolph Coors Co.,* 695 P.2d 311 (Colo.App.1984) (refusing to construe the CAA as providing any remedies in addition to those expressly provided therein); *Red Seal Potato Chip Co. v. Colorado Civil Rights Comm'n,* 44 Colo.App. 381, 618 P.2d 697 (1980) (similarly construing the CAA). All of these cases, we believe, provide persuasive evidence that the Colorado courts are reluctant to imply additional remedies in statutes where there is no clear legislative intent to do so.

In so finding, we note that another panel of this court has interpreted Colorado law similarly. In *Gammill v. U.S.,* 727 F.2d 950 (10th Cir.1984), this court affirmed a district court decision that the plaintiffs could not maintain their action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1982). The plaintiffs had contracted hepatitis allegedly because a civilian physician employed at a military installation failed to notify the public health authorities of infectious hepatitis in a family with whom the plaintiffs had contact, thereby preventing the plaintiffs from receiving effective inoculations. Such failure to notify violated Colo.Rev.Stat. § 25–1–649 (1982),[18] a Department of the Army

---

18. Section 25–1–649 provides as follows:
  When any physician knows that any person whom he is called to visit or who is brought to him for examination is infected with smallpox, cholera, diphtheria, scarlet fever, or any other disease dangerous to public health, he shall give notice immediately thereof to the health officer.... Every physician who refuses or neglects to give immediate notice, for

each offense, upon conviction, shall be punished by a fine of not less than five dollars nor more than one hundred dollars. This penalty shall not be enforced against a physician if another physician in attendance has given to the health officer designated in this section an immediate notice of such sick person and the true name of the disease in ac-

Regulation, and regulations at the military base concerning communicable diseases. This court agreed with the district court that the United States could not be held liable for a violation of section 25–1–649 in part because "Colorado courts have held that when a statute provides for criminal punishment, as does C.R.S. § 25–1–649, the intent of the legislature is presumed to be that such punishment is in lieu of all other remedies." *Gammill,* 727 F.2d at 952. In so holding, we stated as follows:

> First, we note that Colorado courts have been extremely cautious in recognizing private rights of action "implied" by criminal statutes. This reluctance clearly stems from a concern within the Colorado judiciary of crossing over the bounds of the bench into the province of the legislature. *See Quintano v. Industrial Commission,* 178 Colo. 131, 495 P.2d 1137, 1139 (1972); *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370, 1378 (Colo.App.1982). In the present case, C.R.S. § 25–1–649 provides for a criminal fine ranging from five to one-hundred dollars. There is no indication that the legislature also intended to supplement this criminal penalty with a private civil right of action. The Colorado Supreme Court has observed that the creation of such rights "is not a subject in which we should attempt to infer such a legislative intent." *Quintano,* ... 495 P.2d at 1138.... In light of these strong statements, we will not conclude that the district court erred in not inferring a private right of action based upon C.R.S. § 25–1–649.

*Id.* at 953 (footnote omitted).

Rawson endeavors to refute this line of cases with the Colorado Supreme Court's opinion in *Travelers Ins. Co. v. Savio,* 706 P.2d 1258 (Colo.1985) which, he argues, im-

plicitly overrules *Silverstein.* We disagree with Rawson's interpretation of *Savio.* The plaintiff in *Savio* brought a separate tort action against his employer's workmen's compensation carrier for alleged bad faith handling of his claim. No express or implied right of action was invoked under the workmen's compensation statutes; the tort claim was specifically made independently of, not under, those statutes. The insurance company argued that the workmen's compensation statutes provided the exclusive remedy. The Colorado Supreme Court rejected that argument, finding that the Act and plaintiff's claim involved different conduct:

> Such overlap does not exist between our statutes and the tort of bad faith. The duty of an insurer under the Act to provide benefits and compensation is factually and analytically distinct from its duty to deal in good faith with claimants, even though such duties necessarily involve a common underlying physical injury.

706 P.2d at 1270. Thus, the major inquiry and holding in *Savio* addressed an issue wholly unrelated to the issue addressed in *Silverstein,* which was the existence of an implied private right of action under a penal statute. That is the obvious reason why neither *Silverstein* nor related cases were discussed by the Colorado Supreme Court in *Savio;* rather than a supposition that the parties and the court overlooked some important relationship between those cases and *Savio.*[19] Accordingly, we do not find that *Savio* has overruled *Silverstein* or those other Colorado cases.

Other states have followed a view similar to that expressed in *Silverstein* and the other Colorado cases cited above. *See, e.g., Mein v. Masonite Corp.,* 109 Ill.2d 1, 92

cordance with the requirements of this section.

**19.** We note that the defendant in *Savio* argued that the existence of certain penalty provisions in the Workmen's Compensation Act, which specified a fine or business license suspension or revocation for insurers who violated the Act's provisions, defeated the plaintiff's common law causes of action. The court rejected that argument. We do not view that rejection as an

implicit overruling of *Silverstein* and other Colorado cases. Rather, the court in *Savio* simply declined to find that the existence of those penalty provisions caused a particular act (bad faith handling of an insurance claim) to come within the purview of the statutory workmen's compensation scheme. The court did not address the issue of an *implied* private right of action under a penal statute. As indicated above, that issue simply was not the point of the case.

Ill.Dec. 501, 504, 485 N.E.2d 312, 315 (1985) (affirming dismissal of claim alleging wrongful discharge on account of age, and citing with approval *Teale v. Sears Roebuck & Co.*, 66 Ill.2d 1, 3 Ill.Dec. 834, 359 N.E.2d 473 (1976) for the proposition that "[s]ince the [Age Discrimination] Act provided a criminal penalty for its violation, this language was interpreted as an internal restriction which 'strongly militates against, if indeed it does not preclude, expansion of the statutory sanction' to include a civil cause of action."); *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 348 N.E.2d 144, 147 (1976) (affirming dismissal of claims alleging wrongful discharge on account of age, and stating "it cannot be concluded that the General Assembly by 'clear implication' intended to create a civil action for damages for the breach of R.C. 4101.17. This court, therefore, is disinclined to read such a remedy into that section.").[20] *See also Wentworth v. Solem,* 548 F.2d 773, 775 (8th Cir.1977) (affirming

dismissal of complaint alleging violation of statutes concerning the transportation in interstate commerce of goods manufactured by convicts, and stating "we find that [the plaintiff] cannot predicate a private claim on those statutes. [18 U.S.C. s]ections 1761–62 are criminal statutes and do not expressly create a private right of action.").

■ Our review of Colorado cases, as well as those from other jurisdictions, convinces us that the Colorado Supreme Court would decline to imply a private right of action under section 8–2–116. We believe that the Colorado legislature did not intend to provide any remedy for violations of section 8–2–116 other than that expressly provided in section 8–2–117. Accordingly, the district court erred when it concluded that an implied private right of action exists under section 8–2–116.[21]

Because the Colorado Supreme Court has stated, as did the district court in this case,

---

20. Subsequent to the decision in *Fawcett,* the Ohio General Assembly amended the relevant statute to permit civil actions under that statute. Consequently, *Fawcett* does not represent current law regarding private civil actions for age discrimination in Ohio. *See Garry v. TRW, Inc.,* 603 F.Supp. 157 (E.D.Ohio 1985). However, it does indicate the Ohio Supreme Court's view of the propriety of implying a private right of action under a statute which does not specifically provide one.

21. One further matter bearing upon the existence or nonexistence of an implied private right of action under section 8–2–116 is the effect of the Colorado legislature's decision, effective January 1, 1985, to repeal sections 8–2–116 and 8–2–117 and to include age discrimination within the CAA. Each party reaches a different conclusion as to the meaning of the legislature's action. We note that "[s]tatutes may be passed purely to make what was intended all along even more unmistakeably [sic] clear." *United States v. Montgomery County,* 761 F.2d 998, 1003 (4th Cir.1985); *see also Johnson v. Continental West, Inc.,* 99 Wash.2d 555, 663 P.2d 482, 485 (1983). However, the legislative history on the bill effecting the change, House Bill 1198, provides no guidance as to the legislature's intent.

Rawson essentially argues that the decision to repeal sections 8–2–116 and 117 and include age discrimination in the CAA evidences only an intent to put a limit on the type of damages available to age discrimination plaintiffs. It does not indicate, Rawson claims, that the legislature never intended a private right of action

for age discrimination prior to the January 1, 1985 amendment.

Sears, by contrast, argues that the amendment of the CAA and the repeal of sections 8–2–116 and 117 indicate that the legislature never intended to create a private right of action under section 8–2–116. Noting this deficiency, the legislature repealed the current statutes and included age discrimination within the statutory scheme prohibiting all other forms of discrimination, which explicitly provides a specified remedy and procedure for aggrieved plaintiffs. The district court in this case rejected Sears' argument on this issue, stating:

Defendant's argument is clever, but does not persuade me that a private right of action is not authorized by § 8–2–116. I have compared the provisions of the proposed bill to the statute and find that their objectives are not totally dissimilar.

585 F.Supp. 1393, 1394–95.

We find, however, that absent any indication by the legislature of its intent in effecting these changes by means of House Bill 1198, we are simply engaging in speculation as to that intent. Both Rawson's and Sears' arguments on this point have some appeal, but we cannot reach any conclusion which assists us in our inquiry into the proper construction of section 8–2–116. We accordingly acknowledge both parties' arguments but find they do not dissuade us from our conclusion, reached by carefully examining Colorado cases and those from other jurisdictions, that no implied private right of action exists under section 8–2–116.

that the Colorado courts draw "useful guidance" from the jurisprudence of the United States Supreme Court concerning implied rights of action, and because that jurisprudence provides additional support for our conclusion in this case, we turn to a brief review of that case law.

### C. *Supreme Court Law on Implied Rights of Action.*

It is widely thought that *Texas & Pac. Ry. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916) was the first case in which the Supreme Court recognized an implied private right of action under a federal statute which did not itself provide one. Some commentators and courts believe the doctrine had its origins in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) or even earlier. *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); Foy, *Some Reflections on Legislation, Adjudication, and Implied Private Actions in the State and Federal Courts*, 71 Cornell L.Rev. 501 (1986); Note, *Implying Civil Remedies from Federal Regulatory Statutes*, 77 Harv.L.Rev. 285 (1963). For many years the Supreme Court followed an expansive or receptive view of the common law power of courts to imply remedies into statutory schemes where none existed. It followed some variation of the basic maxim "ubi jus ibi remedium" (where there is a right there is a remedy). *See, e.g., Allen v. State Bd. of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). In so doing, the Court looked into the language and legislative history of the particular statute to determine Congressional intent concerning implied private rights of action and it considered whether the judicial implication of a remedy would advance or frustrate the purpose of Congress in enacting the particular statutory scheme. *See, e.g., Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *see also generally* Ashford, *Implied Causes of Action Under Federal Laws: Calling the Court Back to Borak*, 79 Nw. U.L.Rev. 227 (1984); Frankel, *Implied Rights of Action*, 67 Va.L.Rev.

553 (1981). "During the 1940s, 1950s, and 1960s, the federal law of implied private actions began to flower." Foy, 71 Cornell L.Rev. at 559.

In 1975, in its decision in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court endeavored to make explicit the criteria to be used in determining whether a private cause of action should be implied in a statute which does not provide one. It was those factors which the district court applied in this case. Since *Cort*, the question of Congressional intent has become the main concern and the other *Cort* factors have diminished in significance. The question of implication of private remedies is now viewed as a strict question of "statutory construction" to determine "whether Congress intended to create the private right of action asserted." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *see also Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535–36, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622–23, 69 L.Ed.2d 435 (1981); *Texas Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); *Shoultz v. Monfort of Colorado, Inc.*, 754 F.2d 318 (10th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986). If Congressional intent on the question of an implied civil remedy can be discerned from the statute or its legislative history, further inquiry into whether the judicial implication of such a remedy would further or impede Congressional goals is unnecessary. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

In addition, in *Touche Ross*, the Supreme Court employed the familiar maxim "expressio unius est exclusio alterius" to find no implied liability where a statutory scheme contained provisions providing express liability elsewhere. Thus, there has been a distinct shift away from the full application of the *Cort* factors to a narrower exercise of statutory construction in or-

der to glean Congressional intent. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).[22]

As the Eleventh Circuit has noted, "the Supreme Court has imposed increasingly severe restrictions on the availability of implied causes of action under federal statutes." *Local Div. 732, Amalgamated Transit Union v. Metropolitan Atlanta Rapid Transit Auth.,* 667 F.2d 1327, 1334 (11th Cir.1982).[23] Because the Colorado courts draw "useful guidance" from the Supreme Court's cases on the question of implication of remedies and because our review of Colorado cases on the subject convinces us that the Supreme Court's increasingly restrictive view of the availability of such judicially implied remedies is consistent with Colorado law on that issue,

we view the restrictive trend in the Supreme Court as supportive of our conclusion in this case.

## CONCLUSION

For the reasons set forth in this opinion, the decision of the district court denying Sears' post-trial motion for judgment notwithstanding the verdict is reversed; the judgments for costs and damages are vacated; and the case is remanded for entry of judgment dismissing the complaint.

McKAY, Circuit Judge, dissenting:

All panel members occasionally are tempted to ignore or reject a prior decision by another panel because it is inconvenient or, worse, objectionable. However, without being lawless, we are not at liberty to do so because of the clear and uniform rule that only the en banc court may reject established circuit authority. *See United*

---

**22.** For a further discussion of this shift, *see* Ashford, *Implied Causes of Action under Federal Law: Calling the Court Back to Borak,* 79 Nw. U.L.Rev. 227 (1984); Foy, *Some Reflections on Legislation, Adjudication, and Implied Private Actions in the State and Federal Courts,* 71 Cornell L.Rev. 501 (1986); Frankel, *Implied Rights of Action,* 67 Va.L.Rev. 553 (1980); Note, *Implied Causes of Action: A Product of Statutory Construction or the Federal Common Law Power?,* 51 U.Colo.L.Rev. 355 (1980); Note, *State Incorporation of Federal Law: A Response to the Demise of Implied Federal Rights of Action,* 94 Yale L.J. 1144 (1985).

**23.** One issue which has arisen in the context of the Supreme Court's increasing reluctance to imply private remedies in federal statutes is the source of that judicial power in the first place. "Some cases treat the implication of private actions as an exercise in construing the intent of the legislature.... An alternative theory is that in recognizing an implied private right of action, a court exercises an inherent judicial power to create common-law remedies for statutory violations." Frankel, *supra* note 22 at 557 (footnotes omitted). *Compare J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) *and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring in the judgment) (following the view that courts have an inherent judicial power under the common law to fashion remedies for violations of statutes) *with Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), *Touche Ross &*

*Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) *and Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting) (following the view that courts lack the power to fashion remedies for statutory violations absent a clear expression of legislative intent to create such remedies). *See generally* Note, *Implied Causes of Action, supra* note 22.

In view of the Supreme Court's shift after *Borak* to a primary emphasis on legislative intent, it may be that the Supreme Court has adopted the former view—that federal courts lack the power to imply private remedies without clear legislative authorization to do so. *See generally* Frankel, *supra* note 22.

Because, in this case, we must construe the law of Colorado on implication of remedies where statutes provide none expressly, the Supreme Court's increasingly restrictive view of the power of federal courts to imply private remedies is arguably less significant to our decision on state law. State courts, as courts of general jurisdiction, are not subject to the same constraints concerning their power to imply remedies as are federal courts, which are courts of limited jurisdiction. "If the Court's restrictive doctrine of implication rests on the limited jurisdiction of the federal courts ... the doctrine poses no obstacle to the creation of private rights of action under state law." Frankel, *supra* note 22 at 564 n. 64. Nonetheless, as the Colorado courts, including the lower court in this case, take "useful guidance" from the Supreme Court cases, so do we in endeavoring to construe Colorado law.

*States v. Villano,* 816 F.2d 1448, 1450 (10th Cir.1987) (en banc) (en banc rehearing granted "to consider the propriety of changing [our] established rule"); *Wion v. United States,* 325 F.2d 420, 425 (10th Cir. 1963) (en banc) (en banc court convened "to reexamine our prevailing rule"), *cert. denied,* 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964). The en banc rule is a sensible one which avoids chaos and makes possible the consistent disposition of approximately 2,000 cases per year by at least 165 different panels (a number which does not even reflect our frequent use of visiting judges).

One of those rules which has often tempted me is the so-called "local judge" rule: in the absence of direct state precedent in diversity cases, we may not overturn a local district judge's interpretation of state law unless it is clearly erroneous. Perhaps no circuit rule is so sanctified by use and citation, the most recent being within the year. *See Hauser v. Public Serv. Co.,* 797 F.2d 876, 878 (10th Cir.1986) (in reviewing interpretation and application of state law by resident federal district court judge in a diversity action, court of appeals is governed by the clearly erroneous standard); *Weiss v. United States,* 787 F.2d 518, 525 (10th Cir.1986) (clearly erroneous standard); *Corbitt v. Andersen,* 778 F.2d 1471, 1475 (10th Cir.1985) (some deference); *Carter v. City of Salina,* 773 F.2d 251, 254 (10th Cir.1985) (clearly erroneous standard of Fed.R.Civ.P. 52(a) controls); *Rhody v. State Farm Mut. Ins. Co.,* 771 F.2d 1416, 1419 (10th Cir.1985) (great deference standard); *Colonial Park Country Club v. Joan of Arc,* 746 F.2d 1425, 1429 (10th Cir.1984) (some deference standard); *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.,* 739 F.2d 1472, 1477 (10th Cir.1984) (entitled to deference); *Herndon v. Seven Bar Flying Serv., Inc.,* 716 F.2d 1322, 1332 (10th Cir.1983) (decisions may be overturned only where they are prejudicial and clearly erroneous), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984); *King v. Horizon Corp.,* 701 F.2d 1313, 1315 (10th Cir.1983) (clearly erroneous standard); *Guild Trust v. Union Pac.*

*Land Resources Corp.,* 682 F.2d 208, 210 (10th Cir.1982) (court of appeals would follow view of district court as to what doctrine would be adopted by state supreme court); *Loveridge v. Dreagoux,* 678 F.2d 870, 877 (10th Cir.1982) (if federal district court has spoken on matter of state law, question is one of law and appellate review is governed by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a)); *Amoco Prod. Co. v. Guild Trust,* 636 F.2d 261, 264 (10th Cir.1980) (views of resident district judge on matters of state law carry extraordinary force on appeal), *cert. denied,* 452 U.S. 967, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); *Obieli v. Campbell Soup Co.,* 623 F.2d 668, 670 (10th Cir.1980) (degree of deference standard); *Farmers Alliance Mut. Ins. Co. v. Bakke,* 619 F.2d 885, 888 (10th Cir.1980) (extraordinary force standard); *Fox v. Ford Motor Co.,* 575 F.2d 774, 783 (10th Cir.1978) (trial judge presumed to be in a superior position to predict whether state supreme court would follow majority or minority position); *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.,* 571 F.2d 1144, 1148 (10th Cir.) (extraordinary force standard, citing Rule 52(a)), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 561 F.2d 202, 204 (10th Cir.1977) (clearly erroneous standard); *Neu v. Grant,* 548 F.2d 281, 287 (10th Cir.1977) ("extraordinary persuasive force" standard); *Cox v. Cox,* 543 F.2d 1277, 1280 (10th Cir.1976) (great weight standard); *Matthews v. IMC Mint Corp.,* 542 F.2d 544, 546 n. 5 (10th Cir.1976) (district judge's view persuasive and ordinarily accepted); *Land v. Roper Corp.,* 531 F.2d 445, 448 (10th Cir.1976) (great weight standard); *United States v. Hunt,* 513 F.2d 129, 136 (10th Cir.1975) (extraordinary force standard); *Stevens v. Barnard,* 512 F.2d 876, 880 (10th Cir.1975) ("extraordinary persuasive force" standard); *Budde v. Ling-Temco-Vought, Inc.,* 511 F.2d 1033, 1036 (10th Cir.1975) (great weight and credence standard); *United States v. Wyoming Nat'l Bank,* 505 F.2d 1064, 1068 (10th Cir. 1974) (most persuasive standard); *Hardy Salt Co. v. Southern Pac. Transp. Co.,* 501 F.2d 1156, 1163 (10th Cir.) (resident district

judge's views are persuasive and ordinarily accepted), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974); *Casper v. Neubert,* 489 F.2d 543, 547 (10th Cir.1973) (resident district judge's view persuasive and ordinarily accepted); *Julander v. Ford Motor Co.,* 488 F.2d 839, 844 (10th Cir. 1973) (clearly erroneous standard); *Jorgensen v. Meade Johnson Laboratories, Inc.,* 483 F.2d 237, 239 (10th Cir.1973) (district judge's views persuasive and ordinarily accepted); *Sade v. Northern Natural Gas Co.,* 483 F.2d 230, 234 (10th Cir.1973) (resident district judge's views persuasive and ordinarily accepted); *Wells v. Colorado College,* 478 F.2d 158, 161 (10th Cir.1973) (clearly erroneous standard); *Stafos v. Jarvis,* 477 F.2d 369, 373 (10th Cir.) ("extrarodinary persuasive force" standard), *cert. denied,* 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973); *United States v. Hershberger,* 475 F.2d 677, 681 (10th Cir.1973) (great weight and credence standard); *Binkley v. Manufacturers Life Ins. Co.,* 471 F.2d 889, 891 (10th Cir.) (clearly erroneous standard), *cert. denied,* 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973); *Sta-Rite Indus., Inc. v. Johnson,* 453 F.2d 1192, 1195 (10th Cir. 1971) (clearly in error standard), *cert. denied,* 406 U.S. 958, 92 S.Ct. 2062, 32 L.Ed.2d 344 (1972); *Brennan v. University of Kansas,* 451 F.2d 1287, 1291 (10th Cir. 1971) (clearly erroneous standard); *Sutton v. Anderson, Clayton & Co.,* 448 F.2d 293, 297 (10th Cir.1971) (clearly convinced to the contrary standard); *Traders State Bank v. Continental Ins. Co.,* 448 F.2d 280, 282 (10th Cir.1971) (clearly erroneous standard); *Hardberger & Smylie v. Employers Mut. Liab. Ins. Co.,* 444 F.2d 1318, 1320 (10th Cir.1971) ("extraordinary persuasive force" standard); *Vaughn v. Chrysler Corp.,* 442 F.2d 619, 621 (10th Cir.) (knowledgeable and persuasive standard), *cert. denied,* 404 U.S. 857, 92 S.Ct. 106, 30 L.Ed.2d 98 (1971); *Goodyear Tire & Rubber Co. v. Jones,* 433 F.2d 629, 631 (10th Cir.1970) (clearly erroneous standard); *Nevin v. Hoffman,* 431 F.2d 43, 46 (10th Cir.1970) (clearly erroneous standard); *Teague v. Grand River Dam Auth.,* 425 F.2d 130, 134 (10th Cir.1970) (clearly erroneous standard); *Brunswick Corp. v. J &*

*P, Inc.,* 424 F.2d 100, 104 (10th Cir.1970) (clearly erroneous standard); *Parsons v. Amerada Hess Corp.,* 422 F.2d 610, 614 (10th Cir.1970) (clearly wrong standard); *Denning v. Bolin Oil Co.,* 422 F.2d 55, 58 (10th Cir.1970) (manifestly wrong standard); *Equitable Fire & Marine Ins. Co. v. Allied Steel Constr. Co.,* 421 F.2d 512, 514 (10th Cir.1970) (clearly erroneous standard); *Manufacturer's Nat'l Bank v. Hartmeister,* 411 F.2d 173, 176 (10th Cir. 1969) (clearly erroneous standard); *Douglas-Guardian Warehouse Corp. v. Jones,* 405 F.2d 427, 428 (10th Cir.1969) (not the province of court of appeals to settle uncertainties in state law); *Continental Casualty Co. v. Fireman's Fund Ins. Co.,* 403 F.2d 291, 336 (10th Cir.1968) (trial court's conclusion should be accepted on appeal where there is no compelling indication of a contrary local rule); *Adams v. Erickson,* 394 F.2d 171, 173 (10th Cir.1968) (clearly convinced to the contrary standard); *Smith v. Greyhound Lines, Inc.,* 382 F.2d 190, 192 (10th Cir.1967) (clearly erroneous standard); *Scott v. Stocker,* 380 F.2d 123, 126 (10th Cir.1967) (clearly erroneous standard); *Stubblefield v. Johnson-Fagg, Inc.,* 379 F.2d 270, 273 (10th Cir.1967) (clearly convinced to the contrary standard); *Industrial Indem. Co. v. Continental Casualty Co.,* 375 F.2d 183, 185 (10th Cir.1967) (clearly wrong standard); *Jamaica Time Petroleum, Inc. v. Federal Ins. Co.,* 366 F.2d 156, 159 (10th Cir.1966) (clearly convinced to the contrary standard), *cert. denied,* 385 U.S. 1024, 87 S.Ct. 753, 17 L.Ed.2d 674 (1967); *Pittsburgh-Des Moines Steel Co. v. American Sur. Co.,* 365 F.2d 412, 416 (10th Cir.1966) (where state supreme court has not considered question, court of appeals will follow decision of resident district judge); *Solomon v. Downtowner of Tulsa, Inc.,* 357 F.2d 449, 451 (10th Cir.1966) (in absence of ruling of state court, court of appeals would accept opinion of resident federal judge); *Bushman Constr. Co. v. Conner,* 351 F.2d 681, 684 (10th Cir.1965) (clearly erroneous standard), *cert. denied,* 384 U.S. 906, 86 S.Ct. 1340, 16 L.Ed.2d 358 (1966); *Bledsoe v. United States,* 349 F.2d 605, 606 (10th Cir. 1965) (clearly erroneous standard); *First*

*Nat'l Bank & Trust Co. v. Foster*, 346 F.2d 49, 51 (10th Cir.1965) (clearly wrong standard); *Glenn v. State Farm Mut. Auto. Ins. Co.*, 341 F.2d 5, 9 (10th Cir.1965) (clearly wrong standard); *United States Fidelity & Guar. Co. v. Lembke*, 328 F.2d 569, 572 (10th Cir.1964) (clearly convinced to the contrary); *Missouri Pac. R.R. Co. v. American Refrigerator Transit Co.*, 328 F.2d 569, 569 (10th Cir.1964) (clearly erroneous standard); *Robert Porter & Sons, Inc. v. National Distillers Prod. Co.*, 324 F.2d 202, 205 (10th Cir.1963) (trial judge determination accepted if it is within general authorities on point); *F & S Constr. Co. v. Berube*, 322 F.2d 782, 785 (10th Cir.1963) (clearly convinced to the contrary standard); *Buell v. Sears, Roebuck & Co.*, 321 F.2d 468, 470 (10th Cir.1963) (clearly convinced to the contrary standard); *Criqui v. Blaw-Knox Corp.*, 318 F.2d 811, 812–13 (10th Cir.1963) (clearly convinced to the contrary standard); *Dallison v. Sears, Roebuck & Co.*, 313 F.2d 343, 347 (10th Cir.1962) (clearly convinced to the contrary standard); *Hamblin v. Mountain States Tel. & Tel. Co.*, 271 F.2d 562, 564 n. 1 (10th Cir.1959) ("extraordinary persuasive force" standard); *Cranford v. Farnsworth & Chambers Co.*, 261 F.2d 8, 10 (10th Cir. 1958) (court of appeals would leave undisturbed state law interpretation by local resident judge); *Mitton v. Granite State Fire Ins. Co.*, 196 F.2d 988, 992 (10th Cir.1952) (clearly erroneous standard).

The local judge rule is written for and applies only to cases, like the present, in which there is no direct state supreme court precedent regarding the matter of state law in dispute, for the rule is unnecessary when the state supreme court has already spoken and has resolved the issue. As the majority concedes, the Colorado Supreme Court has not ruled on the question of whether there is a private cause of action for employment discrimination in Colorado. Yet, using as its justification the very absence of Supreme Court precedent that requires application of a clearly erroneous standard in this circuit, the majority proceeds to make its "own independent inquiry into the proper interpretation of state law," maj. op. at 911–912, unabashedly adopting a de novo standard of review.

The answer to the legal question given by the local district judge sitting in Colorado in this case is not reversible under a disciplined application of the clearly erroneous standard of review. I believe the majority tacitly admits as much by its elaborate avoidance of the clearly erroneous rule and its application of a de novo standard. How could we conclude otherwise when trial courts in eight cases, both state and federal, have divided equally on the issue of whether Colorado law provides a right to be compensated for wrongful discharge? *See* maj. op. at 911. I find it hard to believe that this court could, with a straight face, conclude that *either* side of this deep division among respected state and federal jurists is *clearly* erroneous. Sound judgment surely suggests that one side does have the better of the argument, of course, but that observation is a far cry from establishing that the other side is clearly erroneous under a logical and disciplined application of that standard of review.

I would happily join the panel in seeking the en banc abandonment of the clearly erroneous standard of review of state law issues. *See Rhody*, 771 F.2d at 1421 (McKay, J., concurring). This panel, however, is without power to ignore, rewrite, or reject it.[1] So long as the rule governs

---

1. The majority's citation of *Catts Co. v. Gulf Insurance Co.*, 723 F.2d 1494, 1503–04 (10th Cir.1983) (McKay, J., dissenting) for the proposition that "deference is inappropriate where local district judges differ," maj. op. at 912 n. 7, is inapposite. In that dissent, I urged only that our own prior appellate precedent regarding the interpretation of Oklahoma law controlled rather than the district judge's contrary analysis in that case. No conflict among federal district courts existed in Oklahoma with respect to the issue in question, and the Oklahoma courts had not addressed the subject. My dissent stood for the unremarkable proposition that we should abide by our own Tenth Circuit precedent under principles of stare decisis in the absence of subsequent Oklahoma authority.

The quotation excised from my footnote in *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1384 n. 2 (10th Cir.1985), *see* maj. op. at 911, while concededly accurate, was notably selective. As a full reading of the footnote makes

circuit review in diversity cases, this panel cannot overturn the trial court's interpretation of state law without rendering nugatory the clearly erroneous standard of review—a much greater mischief in the long run than affirming a result in this case with which the majority disagrees as a matter of first impression.

Even if we were at liberty to apply the majority's proposed de novo review standard, I cannot agree with its analysis of what Colorado law is or will be when the Colorado Supreme Court has occasion to rule on the matter in a pre-statute case.[2] My point of departure from the majority is a fundamental one, as it is rooted in our differing perspectives of what our proper judicial role should be in those diversity cases in which neither legislation nor prior judicial precedent clearly controls disposition. When the state legislature is silent or gives ambiguous messages, the majority perceives its hands to be tied; it considers itself without power to recognize a cause of action not explicitly blessed by the legislature.

This perspective is perhaps excusable, or at least understandable, given the defined and restricted role of federal courts in adjudicating causes of action under federal law. After all, there supposedly is no "federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). We are taught that either Congress or the Constitution, *see Bivens v. Six Unknown Named Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), creates all federal actions. We become accustomed to continually looking to the legislature for signs and clues as to the existence of and extent of the federal rights it establishes. When Congress appears to create a right without a remedy, we proceed to analyze under the principles of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), whether *Congress* impliedly fashioned a remedy, for we have no independent power to invent a federal cause of action. We must always look elsewhere.

This ingrained habit of envisaging all causes of action as emanating solely from either the legislature or the Constitution can easily skew the analysis in a diversity case. The majority in this case, borrowing heavily from federal principles and specifically citing *Cort v. Ash, see* maj. op. at 914–922, fell victim to this constraining habit of looking solely to statutory law in deciding whether Mr. Rawson has a cause of action in Colorado.

In a diversity case, however, our role is radically different, for there we have the privilege of sitting as a common-law court. That Colorado courts are common-law courts is beyond dispute. *See e.g., People v. Montgomery*, 669 P.2d 1387, 1390 (Colo. 1983) (en banc) (recognizing discretionary sentencing power of courts as "derived from the common law"). The first task of a common-law court, of course, is to carry out, or abide by the restraints imposed by, the will of the legislature unless that will be prohibited by either the state or the federal constitution. Its second task is to fill in the interstices left by legislative enactments that are either general in nature or ambiguously express the legislative will. Its duties do not end there, however. Its

clear, the district court's opinion regarding the state law issue in that case was merely dicta and was therefore not controlling on appeal. The note's additional reference to the conflict with another district judge would not have been sufficient alone to justify deviation from our embedded rule.

Of course, the absurdity of deferring in separate cases to irreconcilable interpretations of the same state law issue is obvious, as my concurrence in *Rhody*, 771 F.2d at 1421, discusses at some length. My implied reference to this absurdity in *Maughan* is indicative of the temptation to which I alluded at the beginning of this opinion. My dicta in *Maughan* presaged the fuller development of that concern in *Rhody*

and my supplication for en banc reconsideration of the local judge rule herein. However, *Maughan* is not authority for deviating from the local judge rule when the district court's interpretation is not merely dicta but the basis upon which the holding rests. Admittedly, seeds were planted in *Maughan*, but only en banc action can harvest them.

2. As the majority notes, the Colorado legislature has settled the matter for all future cases by placing complaints for discriminatory discharge based on age within the purview of the Colorado Civil Rights Commission. *See* Colo.Rev.Stat. §§ 24–34–401 to 406 (1982 & Supp.1986).

further task, which is grounded in conservative doctrine antedating the founding of the State of Colorado and even the nation, is to expand and contract causes of action, particularly those sounding essentially in tort, as wisdom and experience dictate. That function is, indeed, the majesty of the common law. Tort law itself was born and evolved not in legislative enactment but by this common-law method so fully accepted as a part of the traditional function of common-law courts. "Perhaps more than any other branch of the law, the law of torts is a battleground of social theory." W. Prosser, Handbook of the Law of Torts § 3 at 14–15 (4th ed. 1971).

The most common source of support for either the evolution of existing causes of action or for the first recognition of what is sometimes called a new cause of action is public policy. Awards for pain and suffering and punitive damages are venerable examples of judicially evolved recoveries. The soundest and most conservative source traditionally tapped by courts when discerning public policy within the context of evolving tort actions has been legislative declarations that certain conduct is criminal.

> Criminal cases may be useful as guides to the type of conduct which the law will condemn or excuse, and the existence of a criminal statute may indicate a legislative policy *which the courts will further by creating tort liability.*
>
> . . . . .
>
> [T]he courts are seeking, by something in the nature of judicial legislation, to *further the ultimate policy for the protection of individuals* which they find underlying the statute, and which they believe the legislature must have had in mind.

*Id.* at § 2 at 9, § 36 at 191 (emphasis added). Thus directed by the clearest of all public policy guideposts, the courts need only award properly measured compensa-

tion to the victims of breaches of such unequivocally declared public policies.

Indeed, even the oft-used argument that the legislature would have explicitly created a private cause of action for breach of a criminal statute if it so intended is itself a common-law creation of the courts. It ought to be applied sparingly, if at all, because it turns the traditional presumption of the common law—that injuries occasioned by a known wrong are compensable—on its head. Common-law courts have not hesitated to be creative in defining causes of actions whenever a well-litigated case makes clear that the new action carries out the basic tenet of awarding just compensation to the victim of a wrong.[3] Nor have they hesitated in abandoning or reformulating dated concepts when their obsolescence is made plain. *See, e.g., O'Connor v. Boulder Colorado Sanitarium Ass'n,* 105 Colo. 259, 96 P.2d 835 (1939) (en banc) (charitable immunity does not bar tort action, merely prevents levy against charitable trust).

To its credit, the Colorado legislature in 1903 early recognized, by making such conduct criminal, that public policy clearly condemns the injury of an employee by unwarranted discriminatory discharge. Although the Colorado Supreme Court has not to date acknowledged the right of recovery for such injury, neither has it denied the right; it simply has not ruled on the issue. We can and must safely assume that the delay, in the grandest traditions of all common-law courts, is due to the absence of a well presented and soundly argued case, rather than indicative of some invented implication that no such right of recompense lies under existing principles.

In my view, the Colorado Supreme Court will be more likely, now that a solid body of proper cases awaits appellate review, to include this cause of action among its cousins rather than invent some notion that the legislature intended by its silence to affirmatively prohibit the traditional exercise of

**3.** Unlike the majority, I perceive no significance in Mr. Rawson's failure to appeal the dismissal of several common-law causes of action. *See* maj. op. at 909 n. 1. Mr. Rawson was the eventual *victor,* and his decision not to appeal

the dismissal of his *alternative* grounds for victory only makes sound economic sense to me. Such failure does not reflect either positively or negatively on whether the Colorado Supreme Court would recognize this cause of action.

the judicial function of fashioning sound remedies for known wrongs. It would be difficult for a common-law court to resist at this late date the recognition of the action, especially if it tried to resist by espousing its own invented rule regarding legislative action by silence.

The fact that the legislature has entered the field since these causes of actions arose and tailored a different kind of remedy for the future has no reasonable implication for these injuries of the past. As the courts are so fond of saying, the legislature is well aware of the common-law process and function and, had it intended to limit this classic common-law function by retrospective application of the new statute, it would have said so.

The trial court in this case has developed a more-than-adequate record to show that this plaintiff has been wronged in violation of both general and legislatively declared public policy. The application of ancient and well respected rules of decision mandates that its judgment and that of its fact-finding common-law jury be affirmed.

Finally, even if I were to restrict myself to a statutory analysis in this case, I am persuaded that the district court's extensive and specific analysis of Colorado law with respect to express and implied statutory rights of action is correct. *See Rawson v. Sears, Roebuck & Co.*, 530 F.Supp. 776 (D.Colo.1982); *Rawson v. Sears, Roebuck & Co.*, 585 F.Supp. 1393 (D.Colo. 1984).

In view of this court's rejection of the basic cause of action, I need not reach the other issues raised by Mr. Rawson in his briefs and arguments. Had we recognized the right of recompense, we might have then examined whether the evidence supported the full amount of the award in this case. That examination might well have been disciplined by the subsequent legislative enactment. It is clear that the legislature, even with hindsight, did not reject the idea that a claim of discriminatory discharge based on age could be heard outside the criminal context; it merely tailored and disciplined the application of the idea. With that in mind, we likely would have

strictly scrutinized whether the plaintiff's evidence fully sustained the damages awarded.