Lawrence A. GAMMILL and Cynthia A. Gammill, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 82–1020.

United States Court of Appeals, Tenth Circuit.

Feb. 13, 1984.

Alfred W. Metzger, Jr., Colorado Springs, Colo., and Carolyn J. Pontius, Denver, Colo., for plaintiffs-appellants.

Robert N. Miller, U.S. Atty., and Susan R. Roberts, Asst. U.S. Atty., Denver, Colo., for defendant-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Plaintiffs Lawrence A. Gammill and Cynthia A. Gammill (the Gammills) appeal from an adverse judgment of the district court. In an action tried to the court, the district judge found that as a matter of law the Gammills could not maintain their action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1976), and, alternatively, that the Gammills' injuries were not proximately caused by the United States. A recitation of the facts will facilitate our review.

## FACTS

On April 20, 1978, Lauralee Johnson was diagnosed as having infectious hepatitis and gastroenteritis. This diagnosis was made at Fort Carson, Colorado, a United States military installation, by Dr. James Hamilton (Hamilton), a civilian physician employed by the United States.

The next day, Ladonna Gammill, wife of plaintiff Lawrence Gammill, and mother of plaintiff Cynthia Gammill, was told by a member of her church that Mrs. Johnson was ill with hepatitis and there was a need for someone to take care of her two small children, Christie and Stephanie. Mrs. Gammill agreed to baby-sit the children and they were consequently brought to her home for the day. Neither child showed symptoms of serious illness, although Stephanie had diarrhea which required Mrs. Gammill and Cynthia Gammill to change her diapers. When Mr. Gammill came home after work, Mrs. Gammill informed him that Mrs. Johnson had hepatitis. At dinner that evening, Mr. Gammill sat next to Stephanie and assisted in feeding her. The children were returned to the Johnson home later that evening; Mr. Gammill was cautious in not entering their home because he knew hepatitis was contagious.

Seven days later, on April 28, 1978, Mrs. Johnson was informed by the staff at Fort Carson that her daughter, Stephanie, also had hepatitis. Dr. Hamilton had also examined Stephanie, and he recommended that the whole family receive gamma globulin inoculations. Neither Dr. Hamilton, nor the staff at Fort Carson notified the public health authorities of the hepatitis in the Johnson household; such notification is required by Colorado law, C.R.S. § 25–1–649 (1973), Department of the Army Regulation 40–418, and regulations regarding communicable diseases at Fort Carson.

On May 16, 1978, Mr. Gammill was brought home from work because of illness. Some time after May 21st, Dr. Pollard, the Gammill's family physician, tested Mr. Gammill for hepatitis and reported a suspected case of hepatitis to the county health authorities. Mr. Gammill's hepatitis tests

were later confirmed and it was also determined that Cynthia Gammill had contracted the disease. As a result of Dr. Pollard's report to the health authorities, five other cases of hepatitis were identified by epidemiological techniques. Mr. Gammill was hospitalized for a time and was ill at home for about five months.

At trial, the Gammill's presented testimony that tended to establish that Stephanie Johnson was the source of infection in the Gammill family, (Tr. 39), that the Gammills would likely have been contacted by the county health department within twenty-four to seventy-two hours if the department had been properly notified by Dr. Hamilton, (Tr. 43), and that if the Gammills had been contacted within that time period they would have had several days to receive effective gamma globulin inoculations (Tr. 43). [Such inoculations are effective if received within two weeks of exposure to hepatitis. (Tr. 157)].

### FINDINGS AND CONCLUSIONS OF THE DISTRICT COURT

The district court concluded that the Gammills could not recover against the United States pursuant to the Federal Tort Claims Act.[1] *Gammill v. United States,* No. 80–A–1518, (D.Colo. Oct. 27, 1981). First, the court found no common-law duty running from the United States to the Gammills that would require the United States to notify the county health department of the hepatitis in the Johnson home. *Id.,* slip op. at 11. To create such a duty would allow liability for nonfeasance on the part of the United States. The court noted that

liability for "nonfeasance" was limited to situations where there was a "special relationship" between the parties, and that there was no such relationship in this case. *Id.*

Second, the court found that liability could not be based upon the violation of statute or regulation.[2] *Id.* at 8. The court cited two independent reasons for this: 1) According to Colorado law, no private right of action exists against individuals or entities performing essentially "state services" in accordance with statute; and 2) Colorado courts have held that when a statute provides for criminal punishment, as does C.R.S. § 25–1–649, the intent of the legislature is presumed to be that such punishment is in lieu of all other remedies. *Id.* at 7–8.

Finally, the district court noted that "no causal connection between the physician's conduct and the resulting injury was established to allow recovery by the plaintiffs." *Id.* at 12. In support of this, the court observed:

if the physician in this case had notified the appropriate health authorities of the hepatitis in the Johnson family pursuant to the statute, the health officials would have had to investigate the matter, find the Gammills had contact with the Johnson baby for three to four hours before she was diagnosed as having the disease, and seek out and advise the Gammills to receive gamma globulin inoculations. Later the Gammills on their own initiative would have had to actually receive the shots. Note that all this activity would have had to have been accom-

---

1. The Federal Tort Claims Act grants jurisdiction to the district courts to hear:

    claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. 1346(b) (1976).

2. Significantly, the court "found no obstacle on the face of the statute for imposing negligence per se." C.R.S. § 25–1–649, noted the court,

does not provide for civil liability on its face, but can be read as creating a civil duty on the part of health professionals to report the incidence of communicable diseases to the county health officials. The court arrived at this conclusion by analyzing Colorado law and noting that a duty may be defined by statute when, 1) the purpose of the statute is to protect against the type of harm the plaintiff sustained, and 2) the plaintiff is a member of the class of persons whom the statute was intended to protect. According to the court, C.R.S. § 25–1–649 met the above requirements and therefore created the possibility of imposing negligence per se for its violation.

plished within the relatively short time span of a couple of days, for the plaintiffs were already infected with hepatitis ... seven days before ... the doctor was under the duty to report the diagnosis. *Id.*

In addition, the court relied upon testimony that, even if the inoculations were given to the plaintiffs, they still would have become sick with the disease—the inoculation would serve only to lessen the degree of sickness. *Id.* at 13.

## I.

■ In order to recover under the Federal Tort Claims Act, *supra,* a claimant must establish that the United States, acting through its employees, committed a tort as defined by the law of the state where the act or omission occurred. In reviewing the district court's judgment, we must consequently look to the law of Colorado to determine whether the correct law was applied. We are convinced that it was and, therefore, affirm.

■ STATUTORY CLAIM: First, we note that Colorado courts have been extremely cautious in recognizing private rights of action "implied" by criminal statutes. This reluctance clearly stems from a concern within the Colorado judiciary of crossing over the bounds of the bench into the province of the legislature. *See Quintano v. Industrial Commission,* 178 Colo. 131, 495 P.2d 1137, 1139 (1972); *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370, 1378 (Colo. App.1982). In the present case, C.R.S.

§ 25–1–649 provides for a criminal fine ranging from five to one-hundred dollars. There is no indication that the legislature also intended to supplement this criminal penalty with a private civil right of action. The Colorado Supreme Court has observed that the creation of such rights "is not a subject in which we should attempt to infer such a legislative intent." *Quintano v. Industrial Commission, supra,* 495 P.2d at 1138. "If the General Assembly has the intent that ... this statute [may be used] as the basis for civil liability, then its expression of this intent should be loud and clear, i.e., by authorizing the remedy." *Id.*[3] In light of these strong statements, we will not conclude that the district court erred in not inferring a private right of action based upon C.R.S. § 25–1–649.[4]

The *type* of statute involved in the present case provides additional support for our conclusion. As the district court pointed out, the purpose of C.R.S. § 25–1–649 is "to benefit the public and not any specific individual or even class of persons." *Gammill v. United States, supra* at 7. Colorado courts have long held that such statutes may not be used for the recovery of individual damages because the duty created by them is public, not private; the violation of these statutes is consequently redressed by public, not private, prosecution. *See People v. Hoag,* 54 Colo. 542, 131 P. 400, 401 (1913); *Quintano v. Industrial Commission, supra* 495 P.2d at 1138; *Dunbar v. Olivieri,* 97 Colo. 381, 50 P.2d 64, 65–66 (1935); *Richardson v. Belknap,* 73 Colo. 52, 213 P. 335, 336 (1923); *Miller v. Ouray E.L. & P. Co.,* 18

**3.** In addressing this issue, the Colorado Court of Appeals has written:

Where a statute creates legal duties and provides a particular means for their enforcement, the designated remedy excludes all others. Here, there is no question but that the legislature could have authorized civil penalties for violation of the act. However, it chose to impose only a criminal sanction. Therefore, *we have no authority to impose civil liability.*

*Silverstein v. Sisters of Charity of Leavenworth,* 38 Colo.App. 286, 559 P.2d 716, 718 (1976) (emphasis added) (cites omitted).

**4.** The Gammills contend Army Regulation 40–418 ("AR–40–418") and Fort Carson's "Standard Operating Procedure for Hepatitis and

Other Communicable Diseases" ("SOP") provide additional basis for a private right of action. We disagree. AR–40–418 and the SOP (in part) require that military personnel be aware of and comply with civilian health laws. It would be anomalous for us to infer a private right of action based upon these regulations after having found no such right attaching to the underlying civilian laws. In addition, we note that the regulations—particularly the SOP—appear to be "gratuitous" protective measures instituted by the Army for the benefit of the public. At least one court has held that such measures may not form the basis of a private right of action against the promulgating entity. *See Clemente v. United States,* 567 F.2d 1140, 1144–45 (1st Cir.1977).

Colo.App. 131, 70 P. 447, 449 (1902). For this reason we must disagree with the district court's statement that there is "no obstacle" on the face of the statute to the imposition of negligence per se; the statute simply creates no duty running to specific individuals supporting a private claim of negligence.

COMMON LAW CLAIM: The Gammills also contend that the United States breached a duty owed to them deriving from common law. In support of this, they cite various cases suggesting that the spread of hepatitis to the Gammill family was a foreseeable risk, and that the United States had a duty to disclose this risk to the public via the county health department. After reviewing the cases, however, we are convinced that these arguments are without merit.

Colorado courts have never directly addressed the issue of a physician's duty to prevent harm to a third person who is not a patient. Generally, however, a person does not have a duty to protect another from harm except when a special relationship exists between the parties, or when the first person placed the other in peril. *See* Restatement (Second) of Torts §§ 314–314(A) (1965). Clearly, there is no "special relationship" between Dr. Hamilton and the Gammills; they were not even acquainted. Neither could it be said that Dr. Hamilton placed the Gammills in peril.

The Gammills contend, however, that Dr. Hamilton's duty to them arises from his *professional position* and relation to people who contract disease. They argue that, as a physician, Dr. Hamilton owed the public the duty of ordinary care to protect them from the diseases of his patients. In support thereof they cite *Davis v. Rodman,* 147 Ark. 385, 227 S.W. 612 (1921); *Wojcik v. Aluminum Co. of America,* 18 Misc.2d 740, 183 N.Y.S.2d 351 (1959); 61 Am.Jur.2d *Physicians and Surgeons* § 245; 41 Am.Jur. *Physicians and Surgeons* § 101; and 70 C.J.S. *Physicians and Surgeons* § 48.

We understand these authorities, however, as expressing a much more limited duty than that urged by the Gammills. A physician may be found liable for failing to warn a patient's *family, treating attendants,* or other *persons likely to be exposed* to the patient, of the nature of the disease and the danger of exposure. 61 Am.Jur.2d *Physicians and Surgeons, supra; Davis v. Rodman, supra.* We note the limited persons to whom such a duty is owed, again suggesting the necessity of some special relationship between the physician and those to be warned. It would appear that at the bare minimum the physician must be aware of the specific risks to specific persons before a duty to warn exists. Here, Dr. Hamilton did not know the Gammills; clearly he was unaware of their risk of exposure. Under these circumstances, we agree with the district court that to impose a duty upon Dr. Hamilton to warn the Gammills would constitute an "unreasonable burden" upon physicians.

We hold that the Gammills' claim has no basis in law and, therefore, we need not discuss the remaining issues raised on appeal.

AFFIRMED.