Gwendolyn C. HENRY and Hilery Henry, Jr., husband and wife, Plaintiffs–Appellees,

v.

MERCK AND COMPANY, INC., a New Jersey corporation and its wholly owned subdivision, Kelco, Defendants–Appellants.

Nos. 86–2659, 86–2661.

United States Court of Appeals, Tenth Circuit.

July 3, 1989.

---

Edwin W. Ash of Ash, Crew & Reid, Okmulgee, Okl., for plaintiffs-appellees.

Harry M. Crowe, Jr. of Crawford, Crowe & Bainbridge, P.A., Tulsa Okl. (C.T. Harrington, Merck & Co., Inc., San Diego, Cal., with him on the brief), for defendants-appellants.

Before ANDERSON, BALDOCK and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Gwendolyn and Hilery Henry brought this diversity action in the United States District Court for the Eastern District of Oklahoma against Merck & Company, Inc. and its wholly owned subsidiary Kelco (jointly referred to as "Kelco"). The complaint alleged that Kelco negligently stored sulfuric acid, and, as a result, Valerie Jones, one of Kelco's employees, stole the acid, removed it from Kelco's premises, and deliberately threw it in the face of Ms. Henry, causing serious injury. After a jury trial, the district court entered a judgment against Kelco of $450,000 for Ms. Henry for her injuries and $35,000 for Mr. Henry for loss of consortium. We reverse.

Kelco raises three issues on appeal: (1) whether Kelco had a duty to take action to prevent Ms. Jones' criminal acts; (2) whether the criminal acts of Ms. Jones were a supervening cause of Ms. Henry's injuries, relieving Kelco of liability; and (3) whether the owner of a dangerous instrumentality is liable for injuries caused thereby after it passes from his control. Because of our disposition of this case on the issues of duty and causation, we need not address the third issue.[1]

Our review of the record convinces us that Kelco owed no duty to Gwendolyn and Hilery Henry to store its acid such that Ms. Jones could not have stolen it and used it in the subsequent assault. We also find that Ms. Jones' acts of stealing the acid and using it to injure Ms. Henry constituted a supervening cause of Ms. Henry's injuries, and Kelco's storage of the acid was, at most, a condition to the injury rather than a proximate cause. Accordingly, we hold that the district court should have granted Kelco's motion for directed verdict.

## I.  FACTS

Kelco operates a chemical manufacturing plant at Okmulgee, Oklahoma, where it makes a product known as xanthan gum. Xanthan gum, a thickener used in food products and oil well drilling fluids, is manufactured by a fermentation process that is constantly monitored by laboratory technicians. The technicians test and monitor the fermentation materials in a laboratory consisting of several rooms that occupy the entire third floor of one of the buildings at Kelco's plant site. All laboratory personnel have access to the entire laboratory.

---

1. The Henrys' counsel made it clear during oral argument that they seek recovery only on a negligence theory. Thus, however denominated, duty and causation are essential elements of the Henrys' case.

At the time of the incident at issue here, Kelco kept chemicals used in the laboratory under a "fume hood," a storage facility fitted with ventilation and drainage equipment. The fume hood was not locked and was accessible to all laboratory personnel.

Among the chemicals kept under the fume hood was a gallon bottle of 98% chromic sulfuric acid used for cleaning glassware in the laboratory. Sulfuric acid is produced in large quantities in the United States for use in fertilizer production, petroleum refining, metals processing, leather processing, and as battery acid. One of sulfuric acid's characteristics is its affinity to water, which allows it to be used as a dehydrating agent. That property makes sulfuric acid useful for commercial purposes, but also makes it hazardous to human flesh. Thus, although sulfuric acid is a stable product when used properly, its dehydrating effect can cause serious burn-like injuries to flesh.

Valerie Jones, the sister-in-law of plaintiff Gwendolyn Henry, had worked for Kelco as a technician in its laboratory for approximately four and one-half years at the time of the occurrence that gave rise to this action. Ms. Jones was a good worker, scored highly on her employee evaluations, and got along well with her coworkers. There was no indication that she was anything other than a responsible adult.

Although Ms. Jones did not use the sulfuric acid in the performance of her duties, she did have access to the fume hood because other chemicals she used on a daily basis were stored there. She was not required to travel away from the plant or to remove chemicals therefrom in the performance of her duties.

On September 3, 1984, Ms. Jones stole a cupful of the concentrated sulfuric acid from the gallon bottle under the fume hood

in Kelco's laboratory.[2] After work, she took the acid from Kelco's premises, drove to the Henrys' home and, after a brief verbal altercation, threw sulfuric acid in Ms. Henry's face.[3] Ms. Henry suffered severe and permanent injuries from the sulfuric acid. Ms. Henry has never been employed by Kelco, and Kelco had no prior relationship with her.

The Henrys brought suit against Kelco under theories of strict liability and negligence. The district court granted summary judgment in favor of Kelco on the strict liability claim, but allowed the negligence claim to go to the jury. After the Henrys' presentation of evidence, Kelco moved for a directed verdict on the ground that there was insufficient evidence to support their negligence claim. The district court denied Kelco's motion, finding that there was sufficient evidence to make it possible for reasonable minds to differ as to the conclusions to be drawn from the evidence. Kelco renewed its motion for a directed verdict on the same ground at the end of its case. The district court again overruled the motion and allowed the jury to render a verdict. The jury returned a verdict of $450,000 for Ms. Henry for her injuries, and $35,000 for Mr. Henry for loss of consortium. Kelco appeals from both judgments.[4]

## II. STANDARD OF REVIEW

Our standard of review in assessing whether the district court should have granted a directed verdict "is the same standard applied by the trial court in passing on a motion for directed verdict." *Motive Parts Warehouse v. Facet Enterprises*, 774 F.2d 380, 385 (10th Cir.1985). "A directed verdict is justified only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion."

---

**2.** Whether the sulfuric acid was stolen from Kelco's laboratory was a fact disputed at trial. For purposes of this opinion, we will assume that the acid was stolen from Kelco's laboratory.

**3.** The altercation arose after Ms. Jones learned that Ms. Henry, who had been baby-sitting Ms. Jones' two year old son, trimmed his hair. Ms.

Jones was convicted of the crime of maiming and was sentenced to serve seven years in the custody of the Department of Corrections of the State of Oklahoma.

**4.** The Henry's have not appealed the summary judgment in favor of Kelco on the strict liability claim.

*McKinney v. Gannett Co., Inc.,* 817 F.2d 659, 663 (10th Cir.1987) (citations omitted).

## III. NEGLIGENCE IN OKLAHOMA

The Oklahoma Supreme Court has held that three elements are essential to a prima facie case of negligence:

(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly exercise or perform that duty and (3) the plaintiff's injuries are proximately caused by the defendant's failure. to exercise his duty of care.

*McKellips v. St. Francis Hosp., Inc.,* 741 P.2d 467, 470 (Okla.1987) (citing *Lay v. Dworman,* 732 P.2d 455, 457 (Okla.1986), and *Thompson v. Presbyterian Hosp., Inc.,* 652 P.2d 260, 263 (Okla.1982)). In this appeal, were are concerned with the first and third elements, duty and causation.

### A. DUTY

The first issue is whether Kelco, under Oklahoma law, owes a duty to an unrelated injured party to store its sulfuric acid in a careful way so as to deter the theft and subsequent use of the acid in a criminal manner to injure the third party.

The existence of a duty is an essential element of a negligence claim; without it the claim must fail. As the Oklahoma Supreme Court said in *Nicholson v. Tacker,* 512 P.2d 156, 158 (Okla.1973):

It is an established rule of law that there can be no actionable negligence where the defendant has breached no duty owed to the plaintiff. Just because the defendant has created a risk which harmed the plaintiff that does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable.

. Whether a duty exists is a legal question to be determined by the court. *Brown v. C.H. Guernsey & Co.,* 533 P.2d 1009, 1013 (Okla.App.1973). If no duty exists, there is nothing for the jury to decide, and a directed verdict must be granted in favor of the defendant. *Hunter Constr. Co. v. Watson,* 274 P.2d 374, 377 (Okla.1953). Thus, as a matter of law, even if Kelco carelessly stored the acid, and that carelessness facilitated Ms. Jones' violent act against Ms. Henry, Kelco is entitled to a directed verdict if it owed no duty to Ms. Henry to prevent the injury.

The general rule is that, absent special circumstances, no duty is imposed on a party to anticipate and prevent the intentional or criminal acts of a third party. Oklahoma follows that rule. *Joyce v. M & M Gas Co.,* 672 P.2d 1172, 1173 (Okla.1983). In *Joyce,* the Oklahoma Supreme Court held that a motorist who left the keys in his truck when it was parked outside his house did not owe a duty to an unrelated victim who was injured when a thief stole the truck and negligently ran into the victim. In so holding, the court said that the victim failed to demonstrate "special circumstances" that created in the motorist a duty to prevent the acts of the thief. *Id.* at 1174.

Oklahoma recognizes only two types of special circumstances that create a duty to anticipate and prevent the acts of a third party: (1) "where the actor is under a special responsibility toward the one who suffers the harm"; and (2) "where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would have taken into account." *Joyce,* 672 P.2d at 1174.[5]

### 1. DUTY ARISING FROM A SPECIAL RESPONSIBILITY

■ A special responsibility may arise from a relationship with the victim coupled

---

5. Other states recognize a duty to protect third persons arising from a special relationship between the actor and the party who actually harms the third party. *E.g., Tarasoff v. Regents of Univ. of Cal.,* 13 Cal.3d 177, 118 Cal.Rptr. 129, 529 P.2d 553, 559 (1974) (psychiatrist had duty to warn victim of patient's specific, articulated intent to kill her). *But see Brady v. Hopper,* 751 F.2d 329, 331 (10th Cir.1984) (psychiatrist had no duty to warn victim of presidential assassination attempt where psychiatrist had no knowledge of the patient's specific threat to a specific victim); *Gammill v. United States,* 727 F.2d 950, 954 (10th Cir.1984) (physician had no duty to warn third parties of an infectious disease contracted by one of his patients).

with a foreseeability of the specific risk to the victim. An example of a relationship that might give rise to a duty to anticipate and prevent the acts of third party is a landlord-tenant relationship. *See Lay v. Dworman,* 732 P.2d 455 (Okla.1986). In *Lay,* the Oklahoma Supreme Court held that a tenant stated a cause of action for negligence against her landlord when she alleged that she was raped by an intruder who gained access through a door that was secured by a defective lock, that the landlord knew that the lock was defective before the assault and had been requested to fix it, and that the landlord was aware that there had been prior rapes in the same apartment complex. The court held that the landlord's knowledge of the dangerous condition created a duty on his part to protect the tenant:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct *knew or should have realized* the likelihood that such a situation might be created and that a third party might avail himself of the opportunity to commit such a tort or crime.

*Id.* at 458 (emphasis added; quoting Restatement (Second) of Torts § 448 (1965)).

Here, Ms. Henry was not injured on Kelco's property. Nor did she have any relationship with Kelco prior to the injury. Indeed, Kelco had no knowledge of Ms. Henry or that she might be harmed as a result of Kelco's storage of the acid. Therefore, we conclude that, under Oklahoma law, Kelco did not have a special relationship with Ms. Henry that gave rise to a duty to protect her from the criminal acts of Ms. Jones.

**6.** The court mentioned that "[s]pecial circumstances in which the negligent operation of a vehicle may be foreseeable include leaving the vehicle in a neighborhood populated by drunks

## 2. DUTY ARISING FROM THE DEFENDANT'S OWN ACTS WHICH CREATE A RECOGNIZABLE HIGH DEGREE OF RISK

Special circumstances that create a duty to protect injured parties may also arise when the defendant's own acts create a recognizable high degree of risk to another. *Joyce v. M & M Gas Co.,* 672 P.2d 1172, 1174 (Okla.1983). In *Joyce,* the court concluded that the driver of a truck that was stolen "owed no duty to the general public to protect its members from the risk of negligent driving of the thief" because the "the tragic events which followed were not a danger reasonably to be anticipated and guarded against." 672 P.2d at 1173, 1174. *See also Felty v. City of Lawton,* 578 P.2d 757, 762 (Okla.1977) (police officer who left squad car running did not owe a duty to the victim when a thief stole the car and ran into the victim because "no 'special circumstances' existed that would impose an additional duty on the part of the defendant to prevent the actions of third persons").

The court in *Felty* observed that although certain acts of a third party may be foreseeable, criminal acts generally are less foreseeable than negligent or intentional (but legal) acts:

> [A]n act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.... Normally the actor has much less reason to anticipate intentional misconduct than he has to anticipate negligence, particularly where the intentional conduct is a crime, since under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law.

*Id.* (citing Restatement (Second) of Torts § 302B comment d).[6]

Here, Ms. Jones was a model employee at all times prior to her theft of the acid,

or in front of a school where it may be stolen by children." *Joyce,* 672 P.2d at 1173 n. 2 (citing *Felty* ).

and Kelco had no reason to know of her criminal propensities or her intention to harm Ms. Henry.[7] Furthermore, sulfuric acid is readily available in the marketplace[8] and there was no testimony that sulfuric acid is commonly subject to theft or that it is commonly used as a weapon.[9] Thus, even if Kelco should have been aware that someone might steal the acid, it was unforeseeable that the thief would use it as a weapon or that it would be used specifically against Ms. Henry.

We conclude that under Oklahoma law there were no special circumstances arising from either a special relationship or the foreseeability of the harm that imposed a duty upon Kelco to prevent Ms. Jones from stealing the acid and throwing it on Ms. Henry. Therefore, the district court should have granted Kelco's motion for directed verdict.

## B. CAUSATION

■ We also conclude that the district court should have granted Kelco's motion for directed verdict on the alternate ground that Ms. Jones' theft and criminal use of the acid constituted a supervening cause of Ms. Henry's injuries. Thus even if Kelco was careless in the storage of the acid, Kelco's actions were not the proximate cause of Ms. Henry's injuries, and Kelco cannot be held accountable to Ms. Henry or her husband.

The law in Oklahoma is clear that before a defendant will be liable for a plaintiff's injuries, the plaintiff must prove that his injuries resulted directly and proximately from the defendant's carelessness. *Woodward v. Kinchen*, 446 P.2d 375, 377 (Okla. 1968). The law does not charge a person with all possible consequences of his acts. Rather, the law ignores the remote cause and looks for the proximate cause of the injury.

"The proximate cause of an event must be that which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred." *Gaines v. Providence Apartments*, 750 P.2d 125, 126–27 (Okla.1987) (citing *Beesley v. United States*, 364 F.2d 194 (10th Cir. 1966) and cases cited there). "Where the negligence complained of only creates a condition which thereafter reacts with a subsequent, independent, unforeseeable, distinct agency and produces an injury, the original negligence is the remote rather than the proximate cause thereof." *Gaines*, 750 P.2d at 127. "This is held to be true though the injury would not have occurred except for the original act." *Beesley*, 364 F.2d at 196 (citing Oklahoma cases).

7. Kelco's personnel manager, who was well acquainted with Ms. Jones, testified that "[s]he was a good worker; her absentee record was very good; she got along well with her coworkers as well as any of us." Tr. Vol. III at 342. *See also* Tr. Vol. III. at 349, 351, 352.

8. Kelco's expert witness gave the following testimony concerning the availability of sulfuric acid:
   A. The chemical known as sulfuric acid is what we refer [to] as the work horse chemical in the industry. In the United States there is no greater chemical product—when I say greater I mean in quantity. There is no more abundance, no greater quantity of any other chemical that will match the production of sulfuric acid.
   . . . .
   Q. Sulfuric acid also used in—does it have very general application by the public?
   A. Yes, it is commonly used by the public.

   Q. In what way?
   A. It is found in every automobile battery. It is found sometimes in small concentrations in drain cleaners around the house.
   . . . .
   Q. Well, Dr. Crynes, is chromic sulfuric acid a commodity that is in common usage?
   A. It is in common usage. You probably could find it in nearly every high school chemistry laboratory and every college or university laboratory. You could probably find it in any industrial laboratory where there is the necessity to clean glassware, or the laboratory, nonporous laboratory ware. Tr. Vol. III at 286–87, 290–91.

9. The Henrys' expert witness testified that valuable and materials commonly used as weapons are subject to theft, but there was no evidence that common chemicals like sulfuric acid are likely to be stolen, much less used as a weapon. *See* Tr. Vol. II at 99.

Generally, the question of proximate cause is one of fact for the jury. *Bannister v. Town of Noble, Okla.*, 812 F.2d 1265, 1267 (10th Cir.1987) (citing *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 263 (Okla.1982)). However, the question becomes an issue of law when there is no evidence from which a jury could reasonably find the required proximate, causal nexus between the careless act and the resulting injuries. *Bannister*, 812 F.2d at 1267 (citing *Smith v. Davis*, 430 P.2d 799, 800 (Okla.1967)). In that circumstance, it is for the court to determine as a matter of law whether intervening factors broke the causal nexus between the original actor's careless behavior and the resulting injury. *Thompson*, 652 P.2d at 264; *Merchants Delivery Service, Inc. v. Joe Esco Tire Co.*, 533 P.2d 601, 604 (Okla.1975).

An intervening factor sufficient to break the causal nexus is a supervening cause.[10] When an intervening cause is found to be supervening, "the original negligence may be said to undergo a legal metamorphosis into a remote cause or 'mere condition.'" *Thompson*, 652 P.2d at 264.

Under Oklahoma law, for an intervening act to be deemed a supervening cause, it must meet a three-prong test: "it must be (1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably foreseeable." *Strong v. Allen*, 768 P.2d 369, 371 (Okla.1989) (quoting *Thompson*, 652 P.2d at 264); *see also Minor v. Zidell Trust*, 618 P.2d 392, 394 (Okla.1980).

An act is independent when it is not logically compelled by, and does not naturally flow from, the original carelessness. Independence does not necessarily imply absence of some linkage between the two acts; rather, it means that the intervening act is neither invited by nor an ordinary response to the original act. When the intervening act is intentionally tortious or criminal, it is more likely to be considered independent. *Cf.* Restatement (Second) of Torts § 302B, comment d (1965). Here, the original act of carelessness was Kelco's storing the acid where it was accessible to all laboratory employees. While the availability of the acid may have made the theft easier, it did not logically compel the theft, nor was the theft an ordinary response to the storage of the acid in the fume hood. Ms. Jones' own acts were independent of Kelco's storage of the acid. Furthermore, Ms. Jones' subsequent criminal use of the acid, which was the immediate cause of the injury, was certainly not logically compelled by, nor did it naturally flow from, Kelco's careless storage of the acid.

The second element of a supervening cause is that the intervening act must be adequate in itself to bring about the injury. Here, although Kelco's actions facilitated Ms. Jones' acquisition of a weapon, it was Ms. Jones' own actions, and not Kelco's, that directly caused the injury.

The third element of a supervening cause is that the intervening act must not be reasonably foreseeable. Indeed, foreseeability is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested. *Atherton v. Devine*, 602 P.2d 634, 636 (Okla. 1979). We find no evidence in this case that could support a finding that Kelco could reasonably have foreseen that Ms. Jones would steal the acid and use it as a weapon. Ms. Jones was a model employee who never gave any indication of criminal propensities, and there was no showing that acid was the sort of material that would typically be subject to theft or used as a weapon.[11]

Although the precise factual circumstances in the case before us have not been addressed by the Oklahoma courts, we find

---

**10.** Oklahoma courts refer to an intervening cause that cuts off the original tortfeasor's liability as "supervening." Other jurisdictions and the Restatement (Second) of Torts § 440 (1965) use the term "superseding" to refer to the same concept. Because our decision rests on Oklahoma law, we will use Oklahoma's terminology in this opinion.

**11.** *See* notes 7 and 9.

the case of *Joyce v. M & M Gas Co.*, 672 P.2d 1172 (Okla.1983), to be dispositive. In *Joyce*, one of the defendant's employees left the ignition key inside a truck belonging to the defendant. A third party stole the truck, drove it through a red light, and collided with the victim. The issue addressed by Supreme Court of Oklahoma was whether leaving the ignition key inside the truck was an act of carelessness that would constitute the proximate cause of the plaintiff's injuries. Citing two previous Oklahoma cases, *Merchants Delivery Service, Inc. v. Joe Esco Tire Co.*, 533 P.2d 601 (Okla.1975), and *Felty v. City of Lawton*, 578 P.2d 757 (Okla.1977), the court found that the actions complained of merely created a condition permitting the subsequent injury but that it did not constitute a proximate cause. *Joyce*, 672 P.2d at 1173.[12]

Reviewing the case before us in light of the *Joyce* decision, we find that Ms. Jones' acts constituted a supervening cause of Ms. Henry's injuries. Ms. Jones' theft of the acid was at least as independent as the theft of the automobile. Likewise, the act of throwing the acid was as adequate to create the injury as the running of the automobile through the red light. Moreover, Jones' criminal acts were no more foreseeable than the theft and negligent driving of an automobile. Indeed, the acts here are even less foreseeable than the acts in *Joyce*. The thief in *Joyce* used the vehicle for driving, the purpose for which vehicles are intended. Ms. Jones, on the other hand, did not use acid for its intended purpose; she used it as a weapon. In

addition, the thief in *Joyce* merely drove the car negligently, which is more foreseeable than an intentional misuse such as Ms. Jones' criminal act throwing the acid on Ms. Henry. A fortiori, Kelco's careless storage of the acid was a mere condition rather than a proximate cause, and Ms. Jones' criminal acts were a supervening cause of Ms. Henry's injuries.[13]

Moreover, we believe that Oklahoma's application of the supervening cause doctrine would follow the analysis of the Nebraska Supreme Court in *Shelton v. Bd. of Regents of Univ. of Neb.*, 211 Neb. 820, 320 N.W.2d 748 (1982). In *Shelton*, a former employee of the defendants stole poison from the defendants' laboratory where he worked. Although his duties did not include working with the poison, he had access to it in the laboratory. After the employee left the defendants' employment, he broke into two homes and poisoned the victims' beverages with the poison that he had previously stolen from the defendants. The representatives of the victims' estates brought suit against the defendants for negligence in failing to control access to the poison. In ruling for the defendants, the court held that even though the former employee had been in prison for attempted murder with a shotgun prior to the time he was hired by defendants, they neither knew nor reasonably should have known that he was likely to steal poison and kill people with it. *Id.* at 753.

The Nebraska court adopted a common-sense approach to employers' liability for

**12.** See also *Woodward v. Kinchen*, 446 P.2d 375 (Okla.1968), where the Oklahoma Supreme Court held that a defendant, who had stopped his car in the middle of a dirt road to carry on a conversation with the driver of another vehicle was not liable for the injuries to a passenger in his car when it was hit by another car that was illegally backing down the road. The court said that the defendant's careless (and illegal) behavior was a mere "condition" rather than a proximate cause of the accident. *Id.* at 378. *But see Lay v. Dworman*, 732 P.2d 455, 458 (Okla.1986) (landlord held liable to a tenant who was raped when landlord knew of prior rapes and of tenant's defective lock, which landlord failed to repair).

**13.** The case before us is distinguishable from the dram shop cases which impose liability on the seller of intoxicating liquors to a noticeably intoxicated buyer and a third party is injured as a result of the intoxication of the buyer. Dram shop laws are sui generis creatures of statute or common law to protect a public interest. Moreover, from an analytical perspective, the intoxication of the buyer of the liquor cannot be said to be independent of the careless act of the seller in selling liquor to an obviously drunk buyer, nor can the subsequent negligence of the intoxicated buyer in driving while under the influence be said to be unforeseeable to the seller. *See Brigance v. Velvet Dove Restaurant*, 725 P.2d 300, 304 (Okla.1986).

the theft and violent use of their possessions:

> Every place of employment offers an employee the opportunity to find some item which, if stolen and improperly used, can cause another harm. Shall we hold an office employer liable if a secretary steals a pair of shears and stabs another? Shall we hold a grocery employer liable if one of its stockpersons steals rat poison and injures another? Shall we hold an automotive employer liable if one of its mechanics steals a tire iron and causes injury to another? We do not believe the law goes that far. In each case the unlawful acts of the employee must be considered to be an efficient intervening cause, else every employer becomes an insurer to the public generally.

*Id.* at 754. Our review of Oklahoma law persuades us that Oklahoma courts would endorse the reasoned view of the Nebraska Supreme Court.

## IV. CONCLUSION

For the foregoing reasons, we hold that Kelco had no duty to Ms. Henry to anticipate and prevent Ms. Jones' criminal acts of stealing the acid and throwing it on Ms. Henry, and that Ms. Jones' criminal acts of stealing the acid and using it as a weapon constituted a supervening cause of Ms. Henry's injuries. Accordingly, we REVERSE the judgment of the district court and remand with instructions to direct a verdict in favor of Kelco.