**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 9/13/96**

**TENTH CIRCUIT**

---

PEGGY NEECE and BUEL H. NEECE,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs-Appellants,　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　　　No. 95-5174
　　　　　　　　　　　　　　　　　　)
INTERNAL REVENUE SERVICE OF THE　)
UNITED STATES OF AMERICA; UNITED　)
STATES OF AMERICA; and FIRST　　　)
NATIONAL BANK OF TURLEY, N.A.,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants-Appellees.　　)

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 88-C-1320)

---

E. John Eagleton (James R. Eagleton, also of Eagleton, Eagleton & Harrison, with him on the briefs), Tulsa, Oklahoma, for Plaintiffs-Appellants.

David English Carmack, Attorney, Tax Division (John J. McCarthy, Attorney, Tax Division, with him on the brief), Department of Justice, Washington, D.C., for Defendants-Appellees United States of America and Internal Revenue Service.

Jerry Reed, Tulsa, Oklahoma (Joseph R. Farris and Jody R. Nathan, of Feldman Hall Franden Woodard & Farris, Tulsa, Oklahoma, with him on the brief) for Defendant-Appellee First National Bank of Turley.

Before **KELLY, ENGEL**[*] and **LOGAN**, Circuit Judges.

**LOGAN**, Circuit Judge.

Plaintiffs Buel and Peggy Neece, husband and wife, appeal from the district court's judgment denying as damages attorney's fees they assert they incurred because of defendants', the Internal Revenue Service (IRS) and First National Bank of Turley (bank), violation of the Right to Financial Privacy Act of 1978 (RFPA), 12 U.S.C. §§ 3401-3422.

I

This case is before us for the third time. In 1986 a jury found Buel Neece guilty of income tax evasion for the years 1979, 1980 and 1981. Before the IRS filed any civil deficiencies, Buel Neece discussed some potential transactions and provided documents to defendant bank's president, Mikel Hoffman, which aroused his suspicions. Hoffman contacted an IRS agent, Gary Benuzzi, related his conversations with Buel Neece, and gave Benuzzi copies of some of the Neeces' financial documents. One of the documents indicated that many of the Neeces' real estate holdings had been transferred to a revocable family trust. Soon thereafter the IRS filed a jeopardy assessment against plaintiffs,

[*] The Honorable Albert J. Engel, Senior United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

2

seizing some of their property.  See 26 U.S.C. § 6861 (a jeopardy assessment allows the IRS, under specific circumstances, to seize property of taxpayers before a determination of tax liability).  Plaintiffs filed a complaint challenging the jeopardy assessment.  After a hearing the district court concluded that an investigation of the family trust "would have revealed that the government was in no worse position relative to the subject properties than without the [t]rust," thus the jeopardy assessment was unreasonable.  V App. tab 80.

Meanwhile plaintiffs received the notice of deficiency required under 26 U.S.C. § 6861(b) to be issued within sixty days after a jeopardy assessment.  Taxpayers challenged that deficiency in the Tax Court.  Plaintiffs also filed a petition for voluntary bankruptcy in an attempt to consolidate their tax litigation.

Plaintiffs then filed the instant suit against the IRS and the bank, alleging a violation of the RFPA.  The RFPA prohibits a financial institution from disclosing a customer's financial records--defined in 12 U.S.C. § 3401(2) as an original, a copy of or "information known to have been derived from" any record held by the bank pertaining to the customer's relationship with the bank--to a governmental authority "unless either the customer authorizes the disclosure of such information or the government obtains a valid subpoena or warrant."  United States v. Frazin, 780 F.2d 1461, 1465 (9th Cir.), cert. denied, 479 U.S. 844 (1986).  The RFPA provides, however, that an officer of the bank can notify a governmental authority that they have information that may be relevant to a possible criminal violation; but such information is limited to identifying "the individual,

3

corporation, or account involved [] and the nature of any suspected illegal activity." 12 U.S.C. § 3403(c). The RFPA also allows an exemption for "disclosure of financial records in accordance with procedures authorized by Title 26." Id. § 3413(c). The district court granted summary judgment in favor of defendants, reasoning that the bank's cooperation with the IRS was a "procedure" under Title 26 and thus an exemption under 12 U.S.C. § 3413(c).

On appeal we reversed and remanded, holding that the bank and the IRS were "not exempted under 12 U.S.C. § 3413(c) from [the] procedural requirement merely because the financial institution voluntarily chooses to allow the IRS, pursuant to 26 U.S.C. §7602(a)(1), to examine financial records pertaining to a taxpayer." Neece v. IRS, 922 F.2d 573, 578 (10th Cir. 1990). On remand the district court found that defendants violated the RFPA. It imposed the $100 statutory penalty against both defendants and awarded $1580 actual damages for the plaintiffs' personal property seized pursuant to the jeopardy assessments, plus costs and reasonable attorney's fees for the RFPA action. The district court denied as actual damages plaintiffs' attorney's fees incurred in the jeopardy assessment action, stating that those fees were denied in the jeopardy assessment action and that decision was res judicata as to those fees.

Plaintiffs appealed again, and we held, inter alia, that the district court's denial of the attorney's fees incurred in the jeopardy assessment abatement proceeding as barred by res judicata was erroneous because the record did not reflect any order in that abatement

4

proceeding denying a request for attorney's fees. Therefore, we reversed and remanded on this issue with instructions for the district court to determine whether to award as damages the attorney's fees in the abatement proceeding as well as those in the Tax Court and bankruptcy actions, if plaintiffs claimed those fees in the district court. Neece v. Internal Revenue Serv., 41 F.3d 1396, 1400 & n. 2 (10th Cir 1994).

This brings us to the district court decision now before us. On remand the district court addressed whether defendants' violation of the RFPA proximately caused plaintiffs' attorney's fees in any of the three legal proceedings. The district court's factual finding included the following:

> 2. Bank President Mikel Hoffman testified that, previous to turning over the [plaintiffs'] file, he became concerned over certain transactions that Mr. Neece was wanting to enter into. He called IRS agent Gary Benuzzi, and told him that Mr. Neece had sought information about mortgaging his homestead as additional collateral for a commercial loan with the bank, and that Mr. Neece stated that the purpose of the proposed mortgage was to enable hi[m] to take an interest deduction for his commercial loan under the home equity law. Mr. Hoffman also told agent Benuzzi that Mr. Neece had told him that the IRS was getting ready to move against Mr. Neece and therefore, he wanted to have a mortgage on his homestead.

> 3. Mr. Hoffman informed agent Benuzzi that Mr. Neece had told another bank employee that the loan was for the purpose of paying the Internal Revenue Service, but that the loan application stated that the loan was for debt consolidation. Mr. Hoffman requested that the agent keep his contact confidential.

> 4. Subsequently, agent Benuzzi visited Mr. Hoffman and requested Mr. Hoffman's file which was turned over without a subpoena. The file turned over to agent Benuzzi contained 1) a copy of the recorded mortgage on the Neece Homestead, 2) a memo by Mr. Hoffman dated November 18, 1987 to Bank personnel advising them not to put credence in the Neece

5

homestead mortgage, 3) the residential loan application of Mr. Neece, 4) an unsigned financial statement for Mr. Neece [which included reference to a family trust]; and 5) a letter by Mr. Hoffman of April 25, 1988 denying the loan application.

     5.  Agent Benuzzi then recommended a Jeopardy Assessment and certain of the Neece's [sic] assets were seized by the IRS. The IRS informed the Neeces that it was making the jeopardy assessment because: 1) Mr. Neece had recently been convicted of tax evasion for the years 1979, 1980, and 1981; 2) Mr. Neece had previously converted checks to cash to conceal flow of funds, used a fictitious name and a nominee trust to conceal assets and income; 3) Mr. Neece had attempted recently to encumber valuable assets by granting a mortgage against his home; 4) Mr. Neece had recently attempted to convert into cash real assets valued at $350,000.

I App. tab 2 at 2-4.

The district court stated that "[t]hese reasons for making the jeopardy assessment were not based on the documents produced in violation of the RFPA, but rather upon the oral information provided by Mr. Hoffman." Id. at 4. The district court thus impliedly found that disclosure of the oral information was not a violation of the RFPA. The district court then concluded that "the oral tip by Mr. Hoffman, among other things known by the IRS (i.e., Mr. Neece's conviction for tax evasion) was the cause of the jeopardy assessment." Id. at 5. The district court also stated that the jeopardy assessment was set aside because the IRS had failed to fully investigate the revocable family trust. The court concluded that "the violation of the RFPA was not the cause of either the jeopardy assessment or its abatement, and thus, was not the proximate cause of the attorney's fees incurred in the jeopardy assessment proceeding." Id.

6

The district court also found that the Tax Court case was the result of plaintiffs' failure to pay taxes, rejecting plaintiffs' claims that the jeopardy assessment foreclosed reaching a settlement on their tax liability before going to Tax Court. The court cited the ongoing difficulties with the IRS in rejecting plaintiffs' assertion that the Tax Court case was proximately caused by the RFPA violation. Finally, the district court concluded the bankruptcy was not proximately caused by the RFPA violation.

On appeal plaintiffs challenge the district court's findings that the documents the IRS obtained from the bank in violation of the RFPA were not the proximate cause of (a) the jeopardy assessment; (b) the Tax Court proceeding; or (c) the bankruptcy case.[1]

## II

## A

We review the trial court's factual findings for clear error and its legal conclusions de novo. Anderson v. Bessemer City, 470 U.S. 564 (1985). The question of proximate cause is generally one for the fact finder (here the district court), see Bannister v. Town of Noble, Okla., 812 F.2d 1265, 1267 (10th Cir. 1987), although "the question becomes an issue of law when there is no evidence from which a [fact finder] could reasonably find the required proximate, causal nexus between the careless act and the resulting injuries." Henry v. Merck & Co., 877 F.2d 1489, 1495 (10th Cir. 1989) (citations omitted). Under

---

[1] Plaintiffs also challenge the court's holding that the oral statements of the bank officer to the IRS agent did not violate the RFPA. In view of our analysis and disposition this is an issue we need not reach.

the RFPA, damages are to be ascertained under the tort law of the state whose law applies.  See Beesley v. United States, 364 F.2d 194, 196 (10th Cir. 1966).  Under Oklahoma law "[t]he proximate cause of an event is that which in a natural and continuous sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred."  Butler v. Oklahoma City Pub. Sch. Sys., 871 P.2d 444, 446 (Okla. Ct. App. 1994).

Plaintiffs argue that the jeopardy assessment flowed directly and naturally from the illegal disclosure of the written documents.  They dispute, as clearly erroneous, the district court's finding that Agent Benuzzi based his recommendation for a jeopardy assessment upon only the oral information.

At an evidentiary hearing on September 12, 1988, Benuzzi testified about his contacts with the bank and his recommendation for the jeopardy assessment.  When asked whether he relied upon "the documents [he] obtained from the bank, the letters and the mortgage . . . in recommending the jeopardy assessment," Benuzzi replied "Yes."  I App. tab 5 at 47.  Further, he stated he attached the documents to the recommendation.  Thus, although Benuzzi may have relied in part upon the oral statements by the bank president, his sworn testimony unequivocally states that he also relied upon the documents in recommending the assessment.  See also III App. tab 44 at 261-67.  We cannot uphold the district court's factual finding to the contrary.  The district court's finding of no proximate cause also appears to be inconsistent with its earlier award of $1580 damages for

8

injuries to plaintiffs' properties seized in the jeopardy assessment. Because that award was made in this action for violation of the RFPA, presumably the court had to find the RFPA violation was the proximate cause of the jeopardy assessment.

Defendants argue that even if Benuzzi relied on the documents, there is no "but for" causation because the IRS would have made the jeopardy assessment in any event. Defendants reason that Hoffman was entitled under the RFPA to contact the IRS, identify plaintiffs and notify the IRS of his concern that plaintiffs might be breaking the law, 12 U.S.C. § 3403(c); further, "[t]he IRS had a duty to investigate the tip from the bank official concerning plaintiffs," Neece, 922 F.2d at 577 n.5. Defendants assert the IRS would have obtained the documents during an investigation, and made a jeopardy assessment. We do not agree. If the IRS had investigated the tip by following proper procedures, plaintiffs would have been provided with notice and an opportunity to notify the bank not to release the documents. See 26 U.S.C. § 7609. Had the IRS sought enforcement of a summons in federal court, plaintiffs could have intervened. In that proceeding plaintiffs would have had the opportunity to explain the legal effect of the revocable trust, and the IRS should not have issued the jeopardy assessment because it would have known that the trust did not jeopardize the IRS' position or interest.

Defendants alternatively argue that even if the jeopardy assessment would not have occurred except for the RFPA violation, the IRS determination to initiate the jeopardy assessment constituted a supervening cause of the assessment. "Under Oklahoma law, for

9

an intervening act to be deemed a supervening cause, it must meet a three-prong test: 'it must be (1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably foreseeable.'" Henry v. Merck & Co., Inc., 877 F.2d at 1494 (quoting Strong v. Allen, 768 P.2d 369, 371 (Okla. 1989) (further quotations omitted)). "Where the negligence complained of only creates a condition which thereafter reacts with a subsequent, independent, unforeseeable, distinct agency and produces an injury, the original negligence is the remote rather than the proximate cause thereof" even if "the injury would not have occurred except for the original act." Id. (citations omitted).

The IRS decision to issue a jeopardy assessment was based in large part upon the information Benuzzi gained in violation of the RFPA; therefore it was not "independent of the original act." Thus, the IRS determination to initiate the jeopardy assessment was not a supervening cause of the assessment. The district court erred in denying plaintiffs' attorney's fees in the jeopardy assessment proceeding as part of plaintiffs' RFPA damages.

B

Plaintiffs also assert that their Tax Court attorney's fees were proximately caused by defendants' violation of the RFPA and the ensuing jeopardy assessment. The district court found, however, that the Tax Court case was necessitated by the taxes plaintiffs owed for 1979, 1980 and 1981. We agree. Plaintiffs were required to pay the taxes or

10

litigate in the Tax Court whether or not the jeopardy assessment had occurred.  Although the jeopardy assessment, which required a sixty-day notice of deficiency, may have accelerated the litigation, the RFPA violation and the resulting jeopardy assessment were not the proximate cause of the Tax Court case.

## C

Finally, we agree with the district court that the bankruptcy court case was not proximately caused by the violation of the RFPA.  Again, although the jeopardy assessment may have caused some additional financial hardship that accelerated the bankruptcy filing, the Neeces' tax liability itself no doubt was the cause of the bankruptcy.

The district court on remand is to determine the amount of attorney's fees plaintiffs reasonably incurred in litigating the jeopardy assessment abatement action, and the amount for which each defendant is liable.

AFFIRMED IN PART, REVERSED IN PART and REMANDED for further proceedings in accordance with this opinion.

11